# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

JESUS ANTONIO RAMOS CERVANTES,
           *Defendant-Appellant.*

No. 09-50521

D.C. No.
2:09-cr-00358-
JFW-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
October 4, 2010—Pasadena, California

Filed May 16, 2012
Amended May 17, 2012

Before: Harry Pregerson, Dorothy W. Nelson, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Pregerson;
Dissent by Judge Ikuta

**COUNSEL**

Michael Tanaka, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Kevin S. Rosenberg, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

---

**ORDER**

The opinion filed May 16, 2012, is amended as follows:

The attached photograph shall be inserted at the end of Slip Op. 5215 and entitled "Appendix A."

---

**OPINION**

PREGERSON, Circuit Judge:

Jesus Antonio Ramos Cervantes appeals the district court's denial of his motion to suppress evidence found in his vehicle. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

**BACKGROUND**

On March 25, 2009, Detective Todd Hankel of the Los Angeles Police Department and his team of narcotics detectives and officers were conducting surveillance of a suspected narcotics stash house in Pacoima, California. Around 1:20 P.M., Hankel observed an unidentified male arrive at, and enter, the suspected stash house. A few minutes later, the unidentified male left the suspected stash house with a large white box and placed the box inside his truck.

Detective Hankel learned from his police radio that the unidentified male drove to a nearby street and pulled over to the curb. Hankel heard over the police radio that the unidentified male got out of his truck with the white box, walked over to a white GMC Envoy, and handed the white box to a second unknown male who was later identified as Cervantes.

Twenty minutes later, Hankel heard over his radio that Cervantes drove his GMC Envoy to a nearby liquor store. Hankel observed Cervantes exiting the liquor store with a purchase, getting inside his GMC Envoy, and driving away.

Shortly thereafter, Hankel heard over his radio that Cervantes drove on Interstate 5 and exited at San Fernando Mission Road. At this point, Hankel observed Cervantes drive through a residential neighborhood. It was Hankel's belief that Cervantes did not take a direct route to his location. Hankel concluded that this was a "counter-surveillance" driving technique that indicated Cervantes was engaging in narcotics trafficking. At this point, according to Hankel, "probable cause existed to believe that Cervantes was engaging in drug trafficking and had a large quantity of narcotics in his possession." Hankel, however, did not attempt to stop Cervantes.

At approximately 2:00 P.M., Hankel heard over his police radio that Cervantes drove to a residence on Polk Street. Hankel drove by the residence and saw Cervantes's GMC Envoy parked on the street. Hankel heard over his radio that Cervantes remained inside the GMC Envoy for approximately five minutes, got out empty handed, and went inside an unknown residence.

At 5:30 P.M., Hankel heard over his police radio that Cervantes and an unknown male left the residence on Polk Street in a white BMW. Forty-five minutes later, Hankel heard that Cervantes and the unknown male returned in the white BMW to the residence on Polk Street. After about one hour, Cervantes returned to his GMC Envoy and went to the rear hatch area of the vehicle. A few minutes later, Hankel heard that Cervantes left the Polk Street residence in the GMC Envoy. At this point, Hankel asked a marked police unit to develop a lawful reason to conduct a traffic stop.

In response to Hankel's request, Officer Sanchez and Officer Colley stopped Cervantes's GMC Envoy after the vehicle

failed to come to a complete stop behind the limit line at an intersection. Cervantes cleared the intersection and, according to Officer Colley, pulled to the curb appropriately when the officers stopped him. During the traffic stop, Sanchez and Colley asked Cervantes for his license, registration, and proof of insurance. Cervantes looked around, but was unable to locate any of the documents. Colley asked Cervantes to step out of the car and performed a pat down search for weapons. Cervantes told Officer Sanchez that he had been arrested previously for driving under the influence, his license had been taken away, and he was currently attending classes. After finding no record of driver's license under the name Cervantes provided, the officers concluded that Cervantes was driving without a license, and decided to impound and search his vehicle.

During the inventory search of the vehicle, Officer Colley located the white cardboard box in the rear passenger seat. A search of the box revealed that it contained approximately two kilograms of cocaine. After the discovery of cocaine, the officers arrested Cervantes for unlawfully transporting narcotics. Once Cervantes was transported to a police station, booked, and positively identified, Department of Motor Vehicles records confirmed that he did, in fact, have a valid driver's license.

Cervantes moved to suppress the cocaine found in his GMC Envoy, claiming that officers searched his vehicle in violation of the Fourth Amendment. The district court denied Cervantes's motion to suppress, finding that the officers had lawfully impounded Cervantes's vehicle pursuant to California Vehicle Code §§ 12500(a), 14602.6(a)(1), 22651(h)(1), and LAPD policy, and that the impoundment and search were justified under the community caretaking exception to the Fourth Amendment's warrant requirement. In the alternative, the district court found that the officers had probable cause to search Cervantes's vehicle and, consequently, held that the

search was valid under the automobile exception to the Fourth Amendment's warrant requirement.

## STANDARD OF REVIEW

We review the district court's denial of a motion to suppress evidence *de novo*. *United States v. Dorsey*, 418 F.3d 1038, 1042 (9th Cir. 2005), *overruled on other grounds by Arizona v. Gant*, 556 U.S. 332, 343-44 (2009). Underlying factual issues are reviewed for clear error. *United States v. Summers*, 268 F.3d 686, 686 (9th Cir. 2001).

## DISCUSSION

### A.   The Automobile Exception

**[1]** Warrantless searches by law enforcement officers "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Under the automobile exception to the Fourth Amendment's warrant requirement, "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). An officer will have probable cause to search if "there is a fair probability that contraband or evidence of a crime will be found in a particular place, 'based on the totality of circumstances.' " *Dawson v. City of Seattle*, 435 F.3d 1054, 1062 (9th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Here, the government contends that the officers had probable cause to search Cervantes's vehicle based on (1) Hankel's conclusory statement that the box in Cervantes's possession came from a "suspected narcotics stash house," and (2) Hankel's observation that Cervantes "did not take a direct route to his location." As explained below, these assertions fail to establish probable cause.

### 1.  *The Suspected Narcotics Stash House*

The government asks us to place heavy reliance on Hankel's conclusory statement that, based on Hankel's training and experience, the white box in Cervantes's possession came from a "suspected narcotics stash house." But in the absence of any underlying facts as to why Hankel suspected the house was a "stash house," this statement is entitled to little, if any, weight in the probable cause analysis.

**[2]** "One of the themes which runs through the decisions on the Fourth Amendment probable cause requirement is that when the ultimate probable cause determination is made, whether by a magistrate when a warrant is sought or upon a motion to suppress evidence obtained without a warrant, mere conclusions will not suffice." 2 Wayne Lafave, Search and Seizure: A Treatise on the Fourth Amendment § 3.5(e), at 297 (4th ed. 2004). *See*, *e.g.*, *Illinois v. Gates*, 462 U.S. at 239 (noting that "wholly conclusory" statements of officers are insufficient to establish probable cause); *United States v. Ventresca*, 380 U.S. 102, 108-09 (1965) (noting that "purely conclusory" statements of officers, without detailing any of the underlying circumstances, will be insufficient to establish probable cause); *Nathanson v. United States*, 290 U.S. 41, 47 (1933) (noting that an officer's "mere affirmance of suspicion or belief without disclosure of supporting facts or circumstances" is insufficient to establish probable cause).

**[3]** In *United States v. Thomas*, we noted that a conclusory allegation by law-enforcement that a particular house was a suspected narcotics stash house, was entitled to little (if any) weight in determining whether officers had satisfied the lower reasonable suspicion standard required to stop a vehicle leaving the house. 211 F.3d 1186, 1189-90 (9th Cir. 2000). We explained that the conclusory allegation, without any foundational facts, was akin to an anonymous tip and, consequently, was entitled to little weight. *Id*. at 1190.

**[4]** Here, as in *Thomas*, Hankel's statements amount to nothing more than conclusory assertions. Hankel failed to provide any underlying facts as to why he, or any other officers, suspected the house was a "narcotics stash location." While Hankel's training and experience are factors to be considered, "it is incumbent upon the arresting or searching officer to explain the nature of his expertise or experience and how it bears upon the facts which prompted the officer to arrest or search." 2 Wayne Lafave, Search and Seizure: A Treatise on the Fourth Amendment § 3.2(c), at 45 (4th ed. 2004) (internal quotation marks omitted). Conclusory statements and a general claim of expertise will not suffice. *Id.*; *Thomas*, 211 F.3d at 1189-92.

### 2. *Cervantes's Failure to Take a Direct Route to His Location*

The government also urges us to rely on Hankel's observation that Cervantes "did not take a direct route to his location." Cervantes's unremarkable driving practices, however, fall short of any indicia of criminal activity.

**[5]** In *United States v. Del Vizo*, we found that officers had probable cause to arrest Del Vizo for narcotics trafficking after they received an anonymous tip and observed Del Vizo and his associates over the course of five days. 918 F.2d 821, 822 (9th Cir. 1990). During their five days of surveillance, officers observed Del Vizo and his associates make multiple trips to various Western Union Offices, engage in counter-surveillance driving techniques (which included circling the area, U-turns, speeding, and pulling over to the curb to let traffic go by), frequently check their rear view mirrors, use payphones, and drive in tandem. *Id.* at 822-23, 826. In reviewing the aforementioned facts, we noted that the question of probable cause was a "close one," but nevertheless found that officers had probable cause to arrest Del Vizo. *Id.* at 827.

**[6]** In contrast to the myriad driving and travel tactics cited in *Del Vizo*, the observations of officers in this case were exceedingly limited. Specifically, Hankel's suspicions were based in large part on the observation that Cervantes "did not take a direct route to his location" because Cervantes exited the freeway and drove through a residential neighborhood. Officers observed none of the counter-surveillance techniques present in *Del Vizo*, and Hankel's declaration—upon which the district court relies—provides no further indication as to why Cervantes's driving behavior should be considered suspicious.

Much of the activity described by Hankel is consistent with perfectly innocent behavior. For example, Hankel notes in his declaration that "[he] heard over [his] police radio that Cervantes drove to a nearby liquor store and parked in front. [He] saw Cervantes come out of the liquor store with a purchase, get inside the GMC, and start driving again." While seemingly innocent conduct may carry a different message to a trained officer, *Del Vizo*, 918 F.2d at 827, it is difficult to imagine what inference a trained officer could draw from this activity, other than that Cervantes entered a liquor store and exited with a purchase.

**[7]** In sum, Hankel's observations regarding Cervantes's benign travel tactics, when coupled with Hankel's conclusory statement about the box in Cervantes's possession, are insufficient to establish probable cause. *See Thomas*, 211 F.3d at 1192. This is only reinforced by Hankel's request that Officers Colley and Sanchez develop a lawful reason to stop Cervantes. Had probable cause existed to stop Cervantes, there would have been no need to develop an independent reason to pull Cervantes over. Thus, the district court erred when it held that the search was valid under the automobile exception to the Fourth Amendment's warrant requirement.

## B. The Community Caretaking Exception

We next consider whether the impoundment and subsequent inventory search of Cervantes's vehicle were justified

by the community caretaking exception to the Fourth Amendment's warrant requirement. Cervantes contends the government failed to meet its burden of establishing that the impoundment of his vehicle was justified under this exception. We agree.

**[8]** Because warrantless searches and seizures are *per se* unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). Under the community caretaking exception, "police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005) (internal quotation marks omitted). Once a vehicle has been legally impounded, the police may conduct an inventory search, as long as it conforms to the standard procedures of the local police department. *South Dakota v. Opperman*, 428 U.S. 364, 375-76 (1976); *see also United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989). However, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

**[9]** In *Miranda v. City of Cornelius*, we considered "whether probable cause to believe that the driver committed a traffic violation is sufficient justification by itself to make the impoundment of the vehicle reasonable under the Fourth Amendment." 429 F.3d at 864. Quoting the Supreme Court's decision in *Opperman*, we answered in the negative, concluding that the reasonableness of the impoundment depended on "whether the impoundment fits within the 'authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience . . . .' " *Id.* (quoting *Opperman*, 428 U.S. at 369). In other words, "a valid caretaking purpose" is required. *Id.*

**[10]** Following both *Opperman* and our decision in *Miranda*, we have held that

> [W]arrantless inventory searches of vehicles are lawful only if conducted pursuant to standard police procedures that are aimed at protecting the owner's property and at protecting the police from the owner charging them with having stolen, lost, or damaged his property. Additionally, a vehicle can be impounded under [California Vehicle Code] § 22651(h)(1) only if impoundment serves some "community caretaking function."

*United States v. Caseres*, 533 F.3d 1064, 1074 (9th Cir. 2008) (internal citation omitted). In *Caseres*, we found the inventory search to be unconstitutional—even though the driver was driving on a suspended license—because the government presented no evidence that the impoundment served any caretaking function. *Id.* at 1075. As we stated in *Caseres*, if "the government fail[s] to establish a community caretaking function for the impoundment" then it "fail[s] to establish the constitutional reasonableness of the seizure and subsequent inventory search." *Id.*

**[11]** Neither Sanchez nor Colley provided any testimony that Cervantes's vehicle was parked illegally, posed a safety hazard, or was vulnerable to vandalism or theft. To the contrary, Officer Colley testified that Cervantes appropriately pulled over to the curb when he was stopped in a residential neighborhood. While it is true that Cervantes's vehicle was not in close proximity to his home at the time it was impounded, *cf. Caseres*, 533 F.3d at 1075 (noting that defendant's vehicle was two houses away from his home), the government presented no evidence that the vehicle would be vulnerable to vandalism or theft if it were left in its residential location, or that it posed a safety hazard, and thus failed to meet its burden to show that the community caretaking exception applied. *Id.*; *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477 n.4 (9th Cir. 1993) (upholding the towing of a car

from a public parking lot, not a residential street, under the community caretaking exception).[1]

[12] Nor can the government justify the impoundment by simply citing to sections of the California Vehicle Code and the LAPD's policy on impoundments and inventory searches. The fact that an impoundment complies with a state statute or police policy, by itself, is insufficient to justify an impoundment under the community caretaking exception. *See Miranda*, 429 F.3d at 864 ("We begin with the premise, apparently not recognized by the Defendants, that the decision to impound pursuant to the authority of a city ordinance and

---

[1]To support the dissent's argument that the government has met its heavy burden, the dissent refers to a photograph that depicts nothing more than a wide street in a residential neighborhood and an illegible sign on the side of the street. The focus of this photograph is not where the government stopped Cervantes, which Officer Colley testified was "at the top of [the] hill." Rather, the focus is on the Polk Street / Laurel Canyon Boulevard intersection. In fact, the photograph does not even show where the top of the hill is. Based solely on this inconclusive photograph, the dissent infers that "[a]n abandoned car in this location would have been a hazard to other drivers, as well as vulnerable to damage, vandalism, or theft." Dissent at 5671. The government, however, has failed to refer to, cite, or even mention the attached exhibit in any of its briefs. In fact, the government concedes that "the record is not developed as to whether defendant's vehicle was actually impeding traffic or posing a safety hazard when officers conducted their traffic stop . . . . " Thus, the government has waived any argument that this photograph demonstrates that the officers could have legally impounded Cervantes's vehicle as a safety hazard. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1011 (9th Cir. 1995). Even were the argument not waived, this single photograph is not enough to meet the *government's* heavy burden to establish that the seizure of Cervantes's vehicle was warranted. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (holding that the "burden is on the Government to persuade the district court that a seizure comes under one of a few specifically established exceptions to the warrant requirement" (internal quotation marks and citation omitted)); *United States v. Howard*, 828 F.2d 552, 555 (9th Cir. 1987) (describing this as a "heavy" burden and one which can not be "satisfied by speculation"). "It is not our role to engineer a path for the Government to meet that burden . . . ." *United States v. Rodgers*, 656 F.3d 1023, 1028 n. 5 (9th Cir. 2011).

state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment . . . ."). "[T]he decision to impound a vehicle after the driver has violated a vehicle regulation must consider the location of the vehicle, and whether the vehicle was actually 'impeding traffic or threatening public safety and convenience' on the streets, such that impoundment was warranted." *Id.* at 865 (quoting *Opperman*, 428 U.S. at 369). No such showing was made here.

Moreover, it is not clear that Officers Colley and Sanchez even complied with the California Vehicle Code when they impounded Cervantes's vehicle. According to California Vehicle Code § 22651(h)(1), an officer may impound and remove a vehicle "[w]hen an officer *arrests* a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, *and does take*, the person into custody." Cal. Vehicle Code § 22651(h)(1) (emphases added). Pursuant to California Vehicle Code § 14602.6(a)(1), "[w]henever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked . . . the peace officer may either *immediately arrest* that person *and cause the removal and seizure of that vehicle* or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person . . . ." Cal. Vehicle Code § 14602.6(a)(1) (emphases added). While the purported reason for the impoundment of Cervantes's car was his alleged driving without a license, in violation of California Vehicle Code § 12500(a), according to both officers, Cervantes was arrested and taken into custody only *after* the vehicle was impounded and the inventory search had already resulted in the discovery of narcotics.

Finally, local police department policies that give officers discretion to choose whether to impound a vehicle are not improper so long as police discretion is exercised "according to standard criteria and on the basis of something other than

suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375 (1987); *see also Whren v. United States*, 517 U.S. 806, 811-12 (1996) ("[W]e [have] never held, *outside the context of inventory search* or administrative inspection . . . that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment") (emphasis added); *United States v. Taylor*, 636 F.3d 461, 465 (8th Cir. 2011) ("[The officer's] testimony leads us to conclude that the search was conducted because police believed they would find evidence of narcotics in [the defendant's] truck, and thus the inventory was merely a pretext for an investigatory search.").

**[13]** Here, Cervantes argues that the community caretaking exception does not apply because the impoundment and subsequent inventory search of his vehicle was a pretext to search for narcotics. We agree. We reach this conclusion based on the fact that Officers Sanchez and Colley stopped Cervantes's vehicle at the direction of Detective Hankel, who was investigating Cervantes for narcotics trafficking. Officers Sanchez and Colley both stated that LAPD narcotics detectives had informed them that they were investigating suspected narcotics trafficking by Cervantes and that they were asked to *assist with the investigation* by conducting a lawful traffic stop of Cervantes's vehicle. The happy accident of not finding Cervantes's driver's license—the existence of a valid license was confirmed shortly thereafter—cannot excuse the officers' investigatory motive for the vehicle impoundment and inventory search. *See Wells*, 495 U.S. at 4 ("[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.").

**[14]** In sum, on this record, the impoundment of Cervantes's vehicle was not justified by the community caretaking exception to the Fourth Amendment's warrant requirement. The district court's contrary holding was error.

## CONCLUSION

Evidence seized in violation of the Fourth Amendment, including any "fruit of the poisonous tree," may not be used in a criminal proceeding against the victim of the illegal search and seizure. *Wong Sun v. United States*, 371 U.S. 471, 487 (1963); *Mapp v. Ohio*, 367 U.S. 643, 656 (1961). Accordingly, we **REVERSE** the district court's denial of Cervantes's motion to suppress and **REMAND** for further proceedings consistent with this opinion.

---

IKUTA, Circuit Judge, dissenting:

We've given police a simple, common-sense rule to deal with vehicles that are left unattended because the driver has been placed under arrest. No complex legal analysis is required. The police merely have to determine whether it's necessary to remove the vehicle from a public location in order to "prevent it from [1] creating a hazard to other drivers or [2] being a target for vandalism or theft." *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005); *see also United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005) (holding that once an arrest is made, the community caretaking doctrine "allow[s] law enforcement officers to seize and remove any vehicle which may impede traffic, threaten public safety, or be subject to vandalism"). If the officers determine that either prong of this simple test is met, they may impound the vehicle in furtherance of their community caretaking function. *See Miranda*, 429 F.3d at 863-65.

But today, the majority wipes out this simple rule. The facts of this case meet the community caretaking test perfectly, and yet the majority holds that the doctrine is not applicable. Because the majority cannot articulate what distinguishes this case, it appears the majority has silently overruled our long

line of precedents establishing the community caretaking doctrine.

Let's start with the facts of this case. The district court determined that the police made a lawful traffic stop and properly arrested the defendant for driving without a valid driver's license.[1] The district court found that Cervantes's car was many miles from his home and there was no licensed passenger to drive the car back to his home. These findings are not clearly erroneous. *See United States v. Feldman*, 788 F.2d 544, 550 (9th Cir. 1986) ("We uphold a district court's findings of fact at a suppression hearing unless they are clearly erroneous."), *cert. denied*, 479 U.S. 1067 (1987). Therefore, as the district court concluded, it was reasonable for the officers to impound the car to protect it from vandalism or theft.

Our precedent compels us to affirm. For example, in *Ramirez v. City of Buena Park*, an officer impounded a man's vehicle for safekeeping after arresting him on suspicion of drunk driving. 560 F.3d 1012, 1016-19 (9th Cir. 2009). The car was legally parked in a drugstore parking lot a little over a mile from the man's home. *Id.* at 1019. We held that the impoundment was justified by the community caretaking doctrine because (1) there was "nothing in the record indicating when Ramirez could return to the drugstore to retrieve his car," and (2) "[l]eaving Ramirez's car in the drugstore parking lot would have made it an easy target for vandalism or theft." *Id.* at 1025. The exact same factors are applicable in this case. *See id.*; *see also Hallstrom v. City of Garden City*, 991 F.2d

---

[1]The majority does not dispute that the police officers had probable cause to arrest Cervantes for driving without a valid license when they decided to impound his vehicle. Cervantes could not produce a copy of his license upon request, and when the officers told him they could not find a valid driver's license for him in their database, Cervantes told the officers that he had been arrested for driving under the influence, that his license had been taken away, and that he was taking classes. In these circumstances, any reasonable officer would have arrested Cervantes to prevent him from driving off illegally.

1473, 1477 n.4 (9th Cir. 1993) (holding that officers' impoundment of an arrestee's car from a private parking lot "to protect the car from vandalism or theft" was reasonable under the community caretaking doctrine).[2]

Because this case is on all fours with our precedent, it's not surprising that the majority is unable to explain why this case doesn't meet our community caretaking standard. The majority gives three reasons for reaching this conclusion, and none of them withstands scrutiny. First, the majority relies on the fact that the police officers did not expressly testify that the vehicle was "parked illegally, posed a safety hazard, or was vulnerable to vandalism or theft." Maj. op. at 5665. But we have never held that the lack of testimony on these points is a fatal flaw; rather, we have concluded that a vehicle left unattended in an exposed or public location when the driver is taken into custody is necessarily vulnerable to vandalism or theft. *See Ramirez*, 560 F.3d at 1025; *Hallstrom*, 991 F.2d at 1477 n.4. Here, the record clearly shows that the arresting officers had good reason to impound Cervantes's car. At the suppression hearing, the government introduced a photograph (attached here) showing the exact location where Cervantes was pulled over. One of the arresting officers testified that he pulled Cervantes over "just at the top of the hill that you see in the photograph," after Cervantes had turned left from Polk Street onto the southbound side of Laurel Canyon Boulevard in Pacoima. The photograph reveals the danger of the situation: Cervantes's car would have been parked at the curb of a four-lane boulevard where there was no apparent parking lane or shoulder, and where the posted speed limit was 40 miles per hour. Not only would an abandoned car in this location have been vulnerable to damage, vandalism, or theft, as

---

[2]The majority attempts to distinguish *Hallstrom* on the ground that it involved impoundment of a vehicle from a parking lot, maj. op. at 5665-66, but provides no explanation as to why a vehicle is an easier target for vandalism or theft in a private parking lot than it would be on the street.

the district court found, but it also would have been a hazard to other drivers.[3]

Second, the majority argues that the officers were not entitled to impound Cervantes's car under state law because they arrested Cervantes after impounding the vehicle, instead of before. This, too, is incorrect. Under California Vehicle Code §§ 22651(h)(1) and 14602.6(a)(1), the impoundment must be incident to an arrest, but neither section specifies whether arrest or impoundment should happen first.[4] The district court found that the police officers did not impound and search Cervantes's vehicle until they had probable cause to arrest Cervantes for driving without a valid license. The court therefore reasonably concluded that the impoundment was contemporaneous with and incident to the decision to arrest, in accordance with both the California Vehicle Code and Los Angeles Police Department policy.

Finally, the majority asserts that the impoundment was invalid because the *subjective* reason Officers Colley and San-

---

[3]The majority attempts to distract attention from the photographic evidence that Cervantes's car was pulled over on a major thoroughfare by arguing that the photograph itself does not prove that Cervantes's car would impede traffic or pose a safety hazard. Maj. op. at 5665-67 n.1. This is a red herring, of course, because the government has no obligation to prove that a car would be a safety hazard in order to meet the requirements of the community caretaking doctrine. Rather, the government needs to show only that a car would be "an easy target" for vandalism or theft—which may be the case even if it's parked in a parking lot. *Ramirez*, 560 F.3d at 1025. The government easily carried this burden, and the majority's strenuous assertions to the contrary are unsupported by any case law.

[4]*See* Cal. Vehicle Code § 22651(h)(1) (the police may impound a vehicle "[w]hen an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody"); Cal. Vehicle Code § 14602.6(a)(1) ("Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, . . . the peace officer may . . . immediately arrest that person and cause the removal and seizure of that vehicle . . . .").

chez impounded Cervantes's vehicle was to further Officer Hankel's narcotics investigation, rather than to carry out a community caretaking function. But there is nothing in the record supporting the majority's speculation that the police impounded his car in bad faith or for the sole purpose of investigation. *Cf. Colorado v. Bertine*, 479 U.S. 367, 372, 376 (1987) (upholding an impoundment and inventory search where the defendant made no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation). As the district court explained at the suppression hearing, the record indicated only that the traffic stop was for the purpose of investigation, which is permissible under *United States v. Whren*, 517 U.S. 806, 813 (1996). Regardless of the police officers' motives for conducting the initial traffic stop, once they determined that they had probable cause to arrest Cervantes for driving without a valid license, they could reasonably decide to impound the vehicle in order to prevent vandalism or theft under the community caretaking doctrine. And that's exactly how the officers explained their decision: "Since the driver was driving without a valid driver's license, in violation of California Vehicle Code Section 12500(a), we decided to impound the GMC pursuant to LAPD policy and California Vehicle Code Section 22651." The district court credited the officers' explanation and determined there was no evidence that the impoundment or inventory search of the GMC was driven by the officers' investigatory motives. This finding of fact was not clearly erroneous. *See Feldman*, 788 F.2d at 550.[5]

---

[5]Even if the officers were also interested in discovering evidence or contraband, so long as an officer "had dual bona fide motives," an investigatory motive does not invalidate an otherwise lawful impoundment and inventory search. *See United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir. 1993). "When the police conduct would have been the same regardless of the officer's subjective state of mind, no purpose is served by attempting to tease out the officer's 'true' motivation." *Id.*; *see also United States v. McCarty*, 648 F.3d 820, 833 (9th Cir. 2011).

Because not one of the majority's reasons for reversing the district court's well-supported conclusion holds water, police officers are left with a question mark. In the future, when is a police officer entitled to impound a vehicle that is left unattended after the driver has been arrested? This opinion provides no guidance, but rather it muddies the clear rule we had previously established. Because the majority's ruling here is contrary to both case law and common sense, I respectfully dissent.

## Appendix A.

