Filed 8/15/16  P. v. Adams CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEE ADAMS,<br><br>    Defendant and Appellant. | 2d Crim. No. B259870<br>(Super. Ct. No. NA097184)<br>(Los Angeles County) |

During a traffic stop, police officers searched appellant Lee Adams's car and discovered methamphetamine.  He was charged with possession of a controlled substance.  (Health & Saf. Code, § 11377, subd. (a).)  The trial court denied his motion to suppress the evidence.  (Pen. Code, § 1538.5.)  A jury convicted him, and he received a suspended sentence and placement on formal probation for three years with terms and conditions including four days in jail.[1]

Adams contends that the trial court erred in denying his suppression motion because the warrantless search of his vehicle violated his Fourth Amendment rights.  He

---

[1] Subsequently, the trial court granted Adams's petition for resentencing under the Safe Neighborhoods and Schools Act (Pen. Code, § 1170.18) and designated his conviction as a misdemeanor.

further requests that we review the trial court's denial of his *Pitchess* motion.[2] We reverse and remand for further factual findings to determine whether the search fell within the "automobile exception" to the Fourth Amendment.[3] In addition, we conclude that there is discoverable *Pitchess* material that must be provided to Adams.

FACTS AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

Long Beach police officers Joshua Brearley and Andrew Fox and parole agent Kashifalighita were part of a drug enforcement team.[4] While on patrol they saw Adams stopped at a red light at the intersection of Del Amo and Long Beach Boulevards. When the light turned green, they saw Adams make a right turn cutting across two lanes of traffic. They activated their lights and siren and followed him for a block. Adams pulled to the curb and legally parked on a residential street.

The three officers approached the driver's side of Adams's vehicle, and Brearley asked him to roll down the window. When Adams failed to do so, Brearley opened the driver's door. He immediately detected "a strong odor of marijuana [smoke] coming out of the vehicle." Brearley asked Adams for his driver's license. After patting his pockets and checking the center console, Adams told Brearley that he did not have it on him. At that time Brearley saw clear green plastic containers "consistent with . . . a medical marijuana container" in the driver's door pocket and the center console. The container in the center console had a label on the outside indicating a particular strain of marijuana.

Brearley asked Adams to step out of the vehicle and stand in front of it. Brearley conducted a records check that revealed that Adams's license had been

---

[2] (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.)

[3] (See *United States v. Ross* (1982) 456 U.S. 798, 800 [holding that "police officers—who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it—may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view . . . that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched' "].)

[4] The record does not disclose Agent Kashifalighita's first name.

2

suspended. Because "[d]riving on a suspended license is towable under [section] 14602.6 of the Vehicle Code,"[5] the officers decided to tow Adams's vehicle. Adams was not under arrest and was not issued a written citation for driving with a suspended license.

Fox conducted an inventory search of the vehicle and discovered a plastic baggie containing methamphetamine inside the green plastic container in the center console. The vehicle did not contain marijuana or smoking pipes, although there were burnt items in the ashtray.

*Defense Evidence*

Adams testified that his windows were already down when he was stopped. He had his driver's license but was never given an opportunity to show it to Brearley. Fox approached the driver's side door and stated, "Let's just say we smell marijuana and make him get out." There was no marijuana odor in the vehicle. Adams had rented the car a few weeks earlier.

While Fox and Brearley searched Adams's car, Kashifalighita asked Adams about his gang associations, telling him "over and over that he knew who [Adams] was." Brearley handcuffed Adams and told him he was under arrest.

*Suppression Hearing*

The trial court found it could not presume Adams had the required knowledge that his license was suspended because the Department of Motor Vehicles (DMV) notice had been returned as unclaimed or undeliverable. The trial court denied the motion to suppress, however, finding there was probable cause to arrest Adams for reckless driving (§ 23103) and the search was valid incident to that.

DISCUSSION

*Search of Adams's Vehicle*

On review of a ruling denying a motion to suppress evidence, we view the facts in the light most favorable to the prosecution and uphold the trial court's factual findings if supported by substantial evidence. (*People v. Woods* (1999) 21 Cal.4th 668,

_____

[5] All further statutory references are to the Vehicle Code.

3

673.)  We decide independently whether the search or seizure was reasonable under the Fourth Amendment.  (*People v. Weaver* (2001) 26 Cal.4th 876, 924.)

We agree with Adams that the police could not have searched his car incident to an arrest for driving recklessly or with a suspended license because he was not "within reaching distance of the passenger compartment at the time of the search" and it was not "reasonable to believe the vehicle contain[ed] evidence of the offense of arrest." (*Arizona v. Gant* (2009) 556 U.S. 332, 351.)  "[W]hen a [vehicle's] recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence."  (*Id.* at p. 343.)

We also agree with Adams that the police had no authority to impound his car and perform an inventory search.  The People assert that Brearley "had probable cause to arrest [him] for the offense of driving with a suspended license."  Both the prosecutor below and the People here acknowledge that Adams " 'technically could not have been arrested for [driving on a suspended license],' " yet rely on Brearley's purported " 'good-faith belief that [he] could be.' "  It is a bedrock principle of constitutional law that "simple ' "good faith on the part of the arresting officer is not enough.". . .  If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers and effects," only in the discretion of the police.'  [Citation.]"  (*Terry v. Ohio* (1968) 392 U.S. 1, 22.)  "[I]t is imperative that the facts be judged against an objective standard:  would the facts available to the officer at the moment of . . . the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? [Citations.]"[6]  (*Id.*, at pp. 21-22.)

---

[6] The officer's subjective motivations are relevant when performing an inventory search of a vehicle impounded under the community caretaking exception to the Fourth Amendment because, unlike other warrantless searches, it does not require probable cause.  (See *People v. Torres* (2010) 188 Cal.App.4th 775, 787-788, citing *Whren v. United States* (1996) 517 U.S. 806, 811.)  Even then, the search is valid only if the facts objectively show a need to perform a community caretaking function.  (See *People v. Ray* (1999) 21 Cal.4th 464, 476-477 ["The appropriate standard under the community

The offense for which the prosecution argued Brearley had probable cause to arrest Adams—and thus to impound and search his vehicle—contains a knowledge element. (See § 14601, subd. (a) ["No person shall drive a motor vehicle at any time when that person's driving privilege is suspended for [certain reasons] if the person so driving has knowledge of the suspension"]; accord § 14601.1, subd. (a).) While that knowledge is "conclusively presumed" if the DMV notifies the driver by mail (*ibid.*), Adams received no such notice, as the trial court found, and the People failed to show that Brearley had any other reason to think that Adams knew about the suspension. The DMV record on which Brearley relied to determine that Adams had a suspended license indicated that Adams's notice of suspension had been "return[ed] unclaimed." At the bottom of the record was an advisement: "verbal or personal service needed." Brearley explained that this means he can tell the driver about the suspension and have the driver sign a form that he sometimes carries in his patrol vehicle, which puts the driver on notice of the suspension.

The People turn their burden of proof on its head, contending that "the record did not demonstrate that Officer Brearley was actually aware of any issues concerning the notice of service or [Adams's] subjective knowledge of the suspension." It was the People's burden, however, to show that Brearley reasonably believed that all elements of the offense—including knowledge—had been met. (See, e.g., *People v. Redd* (2010) 48 Cal.4th 691, 719 ["A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search"].)

_____

caretaking exception is one of reasonableness: Given the known facts, would a prudent and reasonable officer have perceived a need to act in the proper discharge of his or her community caretaking functions?"] (plur. opn. of Brown, J.).) Brearley's stated purpose for the search was "to make sure there is no contraband or illegal items inside [the vehicle] so those items don't end up in the tow yard." We need not consider his subjective motivation, i.e., whether the impound was "for the sole purpose of investigation" (*Colorado v. Bertine* (1987) 479 U.S. 367, 372), because we conclude that under the circumstances the impound was objectively unreasonable.

As evident from his testimony, Brearley was unaware that knowledge of the suspension was required. When asked if "part of [the] investigation takes into account whether the person had notice of the suspension," he responded, "It makes no difference in terms of enforcement action." When asked what would happen "if there was some sort of indication that the person had not been given notice," he stated, "They are still driving on a suspended license." Although an officer's reasonable but incorrect interpretation of an ambiguous law may support probable cause (*Heien v. North Carolina* (2014) 135 S.Ct. 530), here the statute was clear and the mistake unreasonable. It would be Kafkaesque to arrest persons who are unaware of a license suspension without first informing them that they are no longer allowed to drive.

In arguing that Brearley had probable cause to arrest Adams for driving on a suspended license, the People rely on *People v. Auer* (1991) 1 Cal.App.4th 1664, disapproved on another ground in *People v. Williams* (1999) 20 Cal.4th 119, 125. That case, however, involved a defendant who admitted to the arresting officer that "his license was still suspended." (*Id.* at p. 1667.) Here, Adams made no such admission and there is no other evidence that he had the requisite knowledge.

Regardless of probable cause, the People maintain that "the inventory search was proper because it served a community caretaking function." Yet they "did not offer any community caretaking function served by impounding [Adams's vehicle]. The prosecution failed to show [it] was illegally parked, at an enhanced risk of vandalism, impeding traffic or pedestrians, or could not be driven away by someone other than [Adams]." (*People v. Torres*, *supra*, 188 Cal.App.4th at p. 790.) "To the contrary, Officer [Brearley] testified that [Adams] appropriately pulled over to the curb when he was stopped in a residential neighborhood." (*United States v. Cervantes* (9th Cir. 2012) 703 F.3d 1135, 1141.) When asked why they decided to tow Adams's vehicle, Brearley's only explanation was that "driving on a suspended license is towable under [section] 14602.6."

The People point to "the additional circumstances that there was no other person available to drive the vehicle from the scene . . . and the vehicle was rented."

6

They again improperly attempt to shift the burden of proof to Adams, asserting that "there was no evidence that the vehicle was stopped near [his] residence." Framing the issue correctly, there was no evidence that the vehicle was parked far from Adams's home. Nor was there any indication that Adams, who was not under arrest, could not have resolved the issue with his license or made alternate arrangements for the vehicle's return to the rental company. There was no testimony at the suppression hearing that Brearley even knew that the car was rented or that Adams was the only one on the contract.[7] "[T]he government . . . thus failed to meet its burden to show that the community caretaking exception applied. [Citations.]" (*United States v. Cervantes*, *supra*, 703 F.3d at pp. 1141-1142; see *People v. Torres*, *supra*, 188 Cal.App.4th at p. 792.)

The People rely on several cases that are materially distinguishable. In both *People v. Shafrir* (2010) 183 Cal.App.4th 1238 and *People v. Green* (1996) 46 Cal.App.4th 367, the vehicle was impounded and searched after the driver was arrested. As one leading commentator has explained, when a driver who is not arrested "cannot himself operate the car because of an expired license, impoundment of the vehicle is improper unless the driver is 'unable to provide for its custody or removal.' " (3 LaFave, Search and Seizure (5th ed. 2012) § 7.3(c), quoting *United States v. Ibarra* (10th Cir. 1992) 955 F.2d 1405, 1408.) We agree with Minnesota's highest court, which has repeatedly addressed this issue, that "cases in which the driver of a vehicle is arrested are fundamentally different from cases in which the driver remains free. [Citation.]" (*State v. Rohde* (Minn. 2014) 852 N.W.2d 260, 266.) When the driver is arrested, it "may [be] necessary to do *something* with the vehicle," giving the police a reason to take responsibility for it. (*State v. Gauster* (Minn. 2008) 752 N.W.2d 496, 507.) When the driver is not arrested, however, it is "not necessary for the police to take [the] vehicle into custody in the first place." (*Ibid.*; see *Ibarra*, at p. 1409 [community caretaking

---

[7] At trial, Officer Fox testified that Adams stated that it was a rental car and "he was the only driver of the vehicle." Neither he nor his partner followed up on this information.

exception did not apply where person in charge of vehicle was not under arrest and not given opportunity to provide for its custody]; *State v. Lizee* (Vt. 2001) 783 A.2d 445, 448 ["In determining whether impoundment was necessary, courts have focused on whether reasonable alternatives were available, such as whether 'the vehicle can be parked and locked without obstructing traffic or endangering the public,' . . . whether the driver could make alternative arrangements to have the vehicle moved . . . , and whether the owner was under arrest or otherwise incapable of driving the vehicle"].)

Adams was not even being issued a citation when the inventory search began. His vehicle was legally parked in a residential area. Unlike *People v. Steeley* (1989) 210 Cal.App.3d 887, 892, his car was not blocking a driveway so that it needed to be moved as soon as possible. There simply was no need to impound it. (See *People v. Williams* (2006) 145 Cal.App.4th 756, 762-763 [police search of arrestee's legally parked rental car where there was no showing it was in danger was not a valid community caretaking function].)

In *People v. Benites* (1992) 9 Cal.App.4th 309, the reviewing court noted several factors that collectively justified impounding the vehicle under the community caretaking doctrine: "the van and trailer were parked off the highway approximately three miles from [the nearest town] and any public phones; it was a dark, lonely and isolated stretch of road . . . ; it was very late at night; and the van and trailer could be vandalized if left on the highway." (*Id.* at p. 326.) None of those circumstances were present here. The one factor cited in *Benites* that the People rely on here—"the possibility that [the unlicensed driver] would simply drive off once [the officer] left" (*ibid.*)—is not a valid community caretaking function. (See *United States v. Caseres* (9th Cir. 2008) 533 F.3d 1064, 1075 [doubting that *Benites* stands "for the proposition that impounding an unlicensed driver's car to prevent its continued unlawful operation is itself a sufficient community caretaking function"]; *People v. Torres*, *supra*, 188 Cal.App.4th at p. 792 ["[I]f the community caretaking function extended so broadly as to include the deterrence of future illegal activity, it 'would expand the authority of the police to impound regardless of the violation, instead of limiting officers' discretion to

ensure that they act consistently with their role of "caretaker of the streets." ' "].) We decline to follow *Benites* and *People v. Auer*, *supra*, 1 Cal.App.4th 1664 to the extent that they hold otherwise.

The People argue that "the presence of statutory authority to impound the vehicle is [sufficient] by itself to establish the constitutionality of the impound and inventory search." They assert that *People v. Redd*, *supra*, 48 Cal.4th 691 "upheld the constitutionality of a vehicle impound based solely on the presence of statutory authority." They are mistaken. In a conflict between state law and the Fourth Amendment, the Fourth Amendment prevails.[8] (See *Knowles v. Iowa* (1998) 525 U.S. 113 [reversing unconstitutional application of state law permitting full vehicle search upon citation for speeding]; *Sibron v. New York* (1968) 392 U.S. 40, 61 ["The question . . . upon review of a state-approved search or seizure 'is not whether the search [or seizure] was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment"]; see also Cal. Const., art. I, § 24 ["In criminal cases the rights of a defendant . . . to be free from unreasonable searches and seizures . . . shall be construed by the courts of this state in a manner consistent with the Constitution of the United States"].)

That leaves only the People's final justification for the warrantless vehicle search: the automobile exception to the Fourth Amendment. "[A] warrantless search of

---

[8] It is doubtful that section 14602.6 provided authority for the impound here, as the People claim. It provides in relevant part that "[w]henever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended . . . , the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person . . . ." (§ 14602.6, subd. (a)(1).) A California appellate court has interpreted this language to mean the arrest, if required, must occur before the vehicle search. (*Thompson v. City of Petaluma* (2014) 231 Cal.App.4th 101, 110 [section 14602.6 does not permit officers to "impound a vehicle when the driver has not been arrested and the vehicle has not been involved in an accident"].) Regardless, it would be surprising if the statute authorized an officer to "arrest" a suspect—indeed, *required* arrest as a condition of the impound in most cases—without probable cause that the suspect had committed some crime. We need not resolve this issue of state law.

an automobile is permissible so long as the police have probable cause to believe the car contains evidence or contraband. [Citation.]" (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1225.) "Both federal and California laws generally prohibit the use, possession, cultivation, transportation, and furnishing of marijuana." (*City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.* (2013) 56 Cal.4th 729, 737.) Consequently, "the odor of . . . marijuana . . . may furnish probable cause to search a vehicle under the automobile exception to the warrant requirement." (*People v. Waxler* (2014) 224 Cal.App.4th 712, 719.)

In *New York v. Belton* (1981) 453 U.S. 454, a police officer stopped a speeding car. "While asking for the driver's license and registration, the officer smelled burnt marijuana and observed an envelope on the car floor marked 'Supergold'—a name he associated with marijuana. Thus having probable cause to believe the occupants had committed a drug offense," the officer had "a basis for searching the passenger compartment of [the] arrestee's vehicle and any containers therein." (*Arizona v. Gant*, *supra*, 556 U.S. at pp. 339, 344.) Similarly here, the police claimed that they observed Adams driving recklessly, detected the odor of burnt marijuana coming from his vehicle, and saw a container inside labeled with the name of a marijuana strain, all strongly suggesting Adams was using marijuana before or while he was driving. If Officer Brearley's testimony was credited, the officers were entitled to search Adams's car, including the container, for further evidence of his marijuana possession and use.

Adams argues that the marijuana evidence was conflicting, as it is undisputed that no marijuana was found in his vehicle and he testified that he heard the officers conspiring to lie about smelling marijuana as a pretext for the search. He asserts that we should remand this case so that the trial court can explicitly resolve this factual dispute. We agree. Although normally we defer to the trial court's implied factual findings (*People v. Tully* (2012) 54 Cal.4th 952, 979), here the trial court effectively declined to resolve the factual dispute regarding the odor of marijuana when it denied the suppression motion on another ground. Therefore, we will remand for the trial court to resolve the factual conflict. (See *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 792;

10

cf. *People v. Brooks* (1980) 26 Cal.3d 471, 483 ["Where, as here, the trial court elects to bifurcate the suppression hearing, grants the defendant's motion on the first ground presented, and is subsequently reversed on appeal, the reviewing court should remand to the trial court for disposition of the alternate grounds for suppression"].)

*Pitchess Motion*

Prior to trial, Adams moved to discover information in Brearley's and Fox's personnel files regarding complaints and allegations of excessive force, dishonesty, and acts of moral turpitude. In the ensuing in-camera hearing, the trial court found no documents it deemed discoverable. Adams asks us to independently review the sealed transcripts and materials from the in-camera proceedings on his *Pitchess* motion. We have done so.

Although Adams requested review of the records of both officers, the trial court confined its review to complaints against Officer Brearley involving allegations that he filed a false police report. It did not consider, as Adams requested, complaints against Officer Fox or allegations against Brearley involving fabrication of evidence or other dishonest conduct except for allegations involving false reporting. The record is silent as to the trial court's reasons for curtailing its review and whether it informed Adams of the limitations.

Our examination discloses discoverable items within the scope of Adams's request. (See *Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.) Adams testified it was Fox who said, "Let's just say we smell marijuana." The trial court should not have limited its review to complaints against Brearley. Moreover, by considering only complaints of false reporting, the trial court unduly excluded "instances of [alleged] officer misconduct related to the misconduct asserted by the defendant."[9] (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021.)

---

[9] In particular, citizen's complaint No. 2012-0067 was germane to the issue of officer misconduct. In concluding that there are discoverable items, we do not refer to a complaint made by Adams that the trial court "would have ordered . . . to be turned over"

11

Adams's theory was not just that the police filed a false report, but that they fabricated a story about smelling marijuana in order to illegally impound and search his vehicle. He had good cause for requesting complaints of "fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, illegal search/seizure . . . , perjury, [and] dishonesty." On remand, the trial court shall turn over any such materials involving Brearley and Fox. Adams's request for complaints of excessive force, bias, and coercive conduct was overly broad and thus properly denied. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220.)

DISPOSITION

The judgment is reversed. On remand, the trial court shall determine whether the warrantless search of Adams's vehicle was justified under the automobile exception to the Fourth Amendment. In addition, the trial court shall conduct an in-camera review of the *Pitchess* materials involving both Fox and Brearley and turn over any discoverable materials involving either officer.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

---

if it had been available at the in-camera hearing in 2014. Any error in not disclosing that document was harmless, since Adams obviously was aware of its existence.

12

Halim Dhanidina, Judge

Superior Court County of Los Angeles

_____

Katherine J. Galston, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.