**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-30369 |
| Plaintiff-Appellee, | D.C. No. 1:15-cr-00042-BLW-1 |
| v. | |
| JAMES ERIC BURROW, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief Judge, Presiding

Argued and Submitted February 8, 2017
Seattle, Washington

Before: FISHER, PAEZ, and CALLAHAN, Circuit Judges.

This case involves a search of James Burrow's home by a bondsman, Kevin

Ratigan, which resulted in Burrow's arrest and, ultimately, conviction for being a

felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Burrow

moved to suppress the evidence supporting his conviction, arguing that Ratigan

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

was acting as a government agent at the time of the search, that Ratigan's search violated the Fourth Amendment, and that the warrant obtained based on Ratigan's search was invalid. The District Court found that Burrow consented to the search and denied the motion to suppress. Following his conviction, Burrow appealed this decision. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. We review de novo the denial of a motion to suppress evidence. *United States v. Cervantes*, 703 F.3d 1135, 1138 (9th Cir. 2012). Underlying factual findings are reviewed for clear error. *Id.* Whether a defendant freely and voluntarily consented to a search is a question of fact, and is therefore reviewed for clear error. *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000).

2. Warrantless searches violate the Fourth Amendment unless an accepted and well-defined exception applies. *United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009). Consent is such an exception, but the government bears the burden of proving that the consent was voluntary. *Id.* at 415. Whether consent was freely and voluntarily given depends on the totality of circumstances. *See Birchfield v. N. Dakota*, 136 S. Ct. 2160, 2186 (2016); *United States v. Basher*, 629 F.3d 1161, 1168 (9th Cir. 2011). Generally, we apply the five factors identified in *Castillo* to determine voluntariness:

(1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that she had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained.

*United States v. Jones*, 286 F.3d 1146, 1152 (9th Cir. 2002) (citing *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 10988)).

3.      Here, the search was conducted by a private citizen allegedly acting as a government agent.  The *Castillo* factors are thus ill-suited to determining whether Burrow freely and voluntarily consented to Ratigan's search.  Instead, we look to the totality of the circumstances.

4.      Citing to *Bumper v. North Carolina*, 391 U.S. 543 (1968), Burrow contends that his consent to Ratigan's entry and search was tainted by coercion because Burrow was merely acquiescing to Ratigan's claim of right as a bondsman.  But Burrow freely consented to contractual terms giving Ratigan a claim of right to enter and search his home when he signed the bail bond contract. That Ratigan later enforced this right does not mean that Burrow's consent was coerced or involuntary.  *Bumper* therefore does not require reversal, and the

3

District Court's determination that Burrow consented to Ratigan's search was not clearly erroneous.[1]

We recognize Burrow consented contractually only to a search for Matthew Cohagan, not for a search into his own criminal conduct. But no reasonable factfinder could find that looking for Cohagan was not at least one significant motive for Ratigan's search. The search therefore fell within the scope of Burrow's consent. *Cf. United States v. Cleaveland*, 38 F.3d 1092, 1094 (9th Cir. 1994) (holding a private person was not acting as an agent for the police when he had "a legitimate, independent motive apart from crime detection or prevention" for the search and the police participation in the search was not extensive).

Although the dissent maintains that a reasonable factfinder *could* conclude Ratigan conducted the December 31 search solely to incriminate Burrow and not at all to locate Cohagan, we respectfully disagree. Ratigan testified that his purpose in conducting the December 31 search was to search for Cohagan. Cohagan ultimately was found at Burrow's residence on January 6. The December 31 search was part of a series of seven or eight searches Ratigan conducted between November 7 and December 31. No one disputes that this series of searches was

---

[1] We need not reach whether Ratigan was acting as a government agent when he entered and searched Burrow's home because, even if he was, Burrow consented to this conduct.

designed to find Cohagan. Ratigan testified that he conducted the search on December 31—New Year's Eve—because that is a good time to catch fugitives. The fact that Ratigan, who was alone, chose not to attempt to enter the bathroom, where he believed Cohagan might be barricaded and armed, does not negate this motive.

We recognize that this court is not empowered to decide disputed factual issues. *See United States v. Carbajal*, 956 F.2d 924, 930–31 (9th Cir. 1992). But *Carbajal* does not require us to remand for factfinding when the evidence admits of only a single conclusion, here that finding Cohagan was "at least one significant motive" for Ratigan's December 31 search. Dissent at 2.

**AFFIRMED.**

5

*United States v. Burrow*, No. 15-30369

PAEZ, J., dissenting:

I part company with the majority because, in my view, the record does not clearly establish whether Ratigan was looking for Cohagan during the December 31 search. That day, Ratigan searched Burrow's home only after meeting with Davenport, providing him with a written statement, and later learning that the information he had previously provided was stale. After Davenport told Ratigan he could not use his "good" information, Ratigan immediately returned to Burrow's home. After his first attempt to search Burrow's home failed, he immediately called Davenport to explain that he was going to make a second attempt "[to] see if we can't get something for you." After making a successful second attempt, he immediately called Davenport a second time. And even though he did not find Cohagan, Ratigan did not attempt to search the home again.

Ratigan's testimony at the suppression hearing indicates that finding Cohagan was not the purpose of the December 31 search. He testified that he suspected Cohagan was in the padlocked bathroom all along, but that he "didn't want to go into the bathroom" because he was afraid Cohagan was hiding in it with a gun. Although Ratigan's fear of harm might be reasonable, it confirms that he was not motivated to find Cohagan. A reasonable factfinder could conclude that Ratigan's only motivation for the December 31 search was to look for Burrow's

firearm.

These facts distinguish this case from *Miller*. *See United States v. Miller*, 688 F.2d 652, 656–58 (9th Cir. 1982). In that case, a private party pretended to be a customer in order to find out if a man selling farm equipment had stolen his property. *Id.* Thus, "he had an independent motive (recovering his own property) during the *entire* course of the search." *United States v. Reed*, 15 F.3d 928, 933 n.6 (9th Cir. 1994) (distinguishing *Miller*). The same cannot be said of Ratigan, who purposefully did not attempt to access the one location where he thought Cohagan might be found.

Here, a reasonable factfinder could determine that Ratigan exceeded the scope of Burrow's contractual consent because finding Cohagan was not "at least one significant motive" for his December 31 search. If Ratigan exceeded the scope of Burrow's consent, then it matters whether he was acting as a government agent. If he was, the December 31 search violated the Fourth Amendment. As the district court did not address any of the underlying factual questions, and because I do not believe the facts are as clear-cut as the majority believes, I would remand for the district court to decide these questions in the first instance. *See* Fed. R. Crim. P. 12(d).

For these reasons, I respectfully dissent.