Rafael **MATEOS–SANDOVAL** and Simeon Avendando **Ruiz, Plaintiffs,**

v.

**COUNTY OF SONOMA,** et al., Defendants.

No. C11–5817 TEH.

United States District Court, N.D. California.

Jan. 31, 2013.

Alicia Roman, Alicia Roman Law Office, Santa Rosa, CA, Cynthia Morrison Anderson–Barker, Law Office of Cynthia Anderson–Barker, Donald Webster Cook, Robert Frederick Mann, Attorneys at Law, Los Angeles, CA, for Plaintiffs.

Anne L. Keck, County Counsel's Office, Matthew James Leblanc, Robert Lear

Jackson, Office of the City Attorney, Santa Rosa, CA, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

THELTON E. HENDERSON, District Judge.

Presently under consideration are two motions, filed by the County of Sonoma and the City of Santa Rosa, their law enforcement agencies and officials ("County Defendants" and "City Defendants," respectively), which, taken together, request dismissal of all claims presented in this suit. For the reasons set forth below, the Court grants in part and denies in part each motion.

### BACKGROUND

This is a suit brought under 42 U.S.C. § 1983 and California Civil Code § 52.1 raising challenges to various aspects of Defendants' enforcement of California Vehicle Code § 14602.6, which authorizes the impoundment of a vehicle for thirty days under limited circumstances.[1] The present motions address claims raised by the two named plaintiffs in this action—Rafael Mateos–Sandoval, whose vehicle was impounded by County Defendants, and Simeon Avendando Ruiz—whose vehicle was impounded by City Defendants.[2] Each Plaintiff raises five claims relating to Defendants' enforcement of § 14602.6.

#### A. California Vehicle Code § 14602.6

Section 14602.6(a)(1) provides:

Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, driving a vehicle while his or her driving privilege is restricted pursuant to Section 13352 or 23575 and the vehicle is not equipped with a functioning, certified interlock device, or driving a vehicle without ever having been issued a driver's license, the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person. . . . A vehicle so impounded shall be impounded for 30 days.

Within two working days of an impoundment pursuant to § 14602.6(a)(1), the impounding agency must notify the vehicle's owner of the impoundment. Cal. Veh. Code § 14602.6(a)(2). The vehicle's owner "shall be provided the opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the storage, in accordance with Section 22852." Cal. Veh. Code § 14602.6(b). Section 22852 sets out the procedure for hearings to "determine the validity of the storage" and provides, among other things, that a "public agency may authorize its own officer or employee to conduct the hearing if the hearing officer is not the same person who directed the storage of the vehicle." Cal. Veh. Code § 22852(c).

#### B. Mateos–Sandoval

Plaintiffs allege that, on January 27, 2011, Mateos–Sandoval was driving his GMC Sierra pickup truck on Santa Rosa avenue when a Sonoma County Sheriff's Department (SCSD) deputy pulled him over. He stopped his truck at a safe and legal location by the street curb in front of a credit union parking lot. The truck was not blocking traffic.

---

1. Unless otherwise specified, citations to sections of California statutory law are to the Vehicle Code.

2. Mateos–Sandoval and Avendando Ruiz seek to represent a statewide class of drivers.

The deputy informed Mateos–Sandoval that his truck's trailer hitch was blocking its license plate and asked to see his driver's license. When Mateos–Sandoval responded that he had a driver's license from Mexico, the deputy ordered the impoundment of Mateos–Sandoval's truck under § 14602.6, and called for a tow truck.

While the deputy and Mateos–Sandoval were still at the scene of the traffic stop, his friend Sonja Oralia Ortiz arrived. Ortiz told the deputy that she had a California driver's license, and Mateos–Sandoval and Ortiz asked the deputy to permit Ortiz to drive the truck away. The deputy denied their request. The tow truck arrived and removed Mateos–Sandoval's truck.

Mateos–Sandoval alleges that he was not arrested, but he was charged with violating § 12500 of the California Vehicle Code, driving without a valid California driver's license, and § 5201, relating to the proper mounting of license plates. On March 28, 2011, Mateos–Sandoval appeared in the Superior Court of the County of Sonoma, where he pled guilty to, and was convicted of, the § 12500 charge. The § 5201 charge was dismissed.[3]

On January 28, 2011—the day after his truck was impounded—and again on January 31, 2011, Mateos Sandoval went to the SCSD office, where he requested a hearing in order to get his truck back. On both occasions, SCSD personnel informed him that he was not eligible for a tow hearing and refused to schedule one.

Later, Mateos–Sandoval received by mail a California Highway Patrol ("CHP") form 180, "Notice of Stored Vehicle." The form stated, "[u]nder the provisions of Section 22852 VC, you have the right to a hearing to determine the validity of this storage." (Docket No. 21, Exhibit A.) The form did not specify why Mateos–Sandoval's truck was being impounded for thirty days; it informed him only that it "was stored pursuant to the provisions of the California Vehicle Code." (Docket No. 21, Exhibit A.)

On February 1, 2011 and February 3, 2011, SCSD personnel informed Mateos–Sandoval that the thirty-day impoundment of his truck was required under § 14602.6, even though he had a Mexican driver's license. Mateos–Sandoval was denied the use of his truck for over thirty days. He seeks recovery for the resulting expenses, and for expenses incurred in his attempts to recover his truck.

### C. Avendando Ruiz

Plaintiff Simeon Avendando Ruiz alleges that on or about September 1, 2011, he was driving his Chevy Silverado pickup truck when he was stopped at a checkpoint

---

3. The Court GRANTS IN PART and DENIES IN PART County Defendants' unopposed request for judicial notice. The Court takes judicial notice of Mateos–Sandoval's judgment of conviction for violating § 12500. *See United States v. Lopez–Solis*, 447 F.3d 1201, 1210 (9th Cir.2006). The Court also takes notice of the existence of the judicial opinions and complaint in the *Salazar* case, but not their factual content. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir.2001). County Defendants' request is DENIED with respect to the police report and police department records, with the exception of CHP form 180, which is the only document that was incorporated by reference into the complaint.

*United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir.2003). These documents are improper subjects of judicial notice. *See id.; United States v. Perez–Corona*, 295 F.3d 996, 1001 at n. 4 (9th Cir.2002). For purposes of the present motion, the Court treats the documents of which it has taken notice as part of the complaint. *See Ritchie*, 342 F.3d at 908.

County Defendants' motion to strike the documents attached to Plaintiffs' Opposition (Docket No. 32) is GRANTED because Plaintiffs do not request judicial notice of them, they are not incorporated by reference in the complaint, and they do not form the basis of Plaintiffs' claims. *See Ritchie*, 342 F.3d at 907–08.

by Santa Rosa Police Department ("SRPD") officers.[4] Without asking Avendando Ruiz whether he had ever been licensed to drive in any jurisdiction, the officers ordered the impoundment of his truck under § 14602.6. Avendando Ruiz had, in fact, been issued a Mexican driver's license and alleges that he would have produced that license had the SRPD officers asked him to do so. Avendando Ruiz's truck was impounded for thirty days. Avendando Ruiz was not arrested but he was charged with violating § 12500 of the California Vehicle Code, driving without a valid California driver's license. On October 4, 2011, he appeared in the Superior Court of the County of Sonoma, where he pled *nolo contendere* to, and was convicted of, the § 12500 charge.[5]

Avendando Ruiz received a CHP form 180 in the mail. On or about September 6, 2011, he informed SRPD through his attorney that he had a valid Mexican driver's license and requested that SRPD release his truck. SRPD refused on the ground that § 14602.6, as interpreted by SRPD, mandated that his truck be impounded for thirty days.

Avendando Ruiz alleges that at all times while his truck was impounded, he was ready and able to pay the storage fee and have a person with a California driver's license drive his truck away from the storage yard. However, Defendants prevented him from doing so based on their policy of treating individuals with Mexican drivers licenses as individuals who have never

been issued a driver's license for purposes of § 14602.6.

Avendando Ruiz took possession of his truck after the expiration of the impoundment period by paying the accrued storage fees and an administrative fee charged by SRPD. As a result of the loss of the use of his truck for more than thirty days and his efforts to retrieve it, Avendando Ruiz incurred expenses, which he now seeks to recover.

### D. The Complaint

On December 2, 2011, Plaintiffs filed a complaint in this Court presenting claims for relief under 42 U.S.C. § 1983 and California Civil Code § 52.1. They seek declaratory and injunctive relief, restitution, and damages on behalf of themselves and a statewide class of individuals who "have had cars seized/impounded for thirty days pursuant to § 14602.6, or may in the future have them so seized/impounded." (Docket No. 1, at p. 12.). The complaint encompasses five claims, each alleged against all defendants, and a facial challenge to § 14602.6.

### LEGAL STANDARD

Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1), for lack of standing and 12(b)(6), for failure to state a claim. A complaint must contain "a short and plain statement" showing "the grounds for the court's jurisdiction" and "that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). A

---

4. The vehicle code has since been amended to prohibit the impoundment under § 14602.6 of vehicles stopped at sobriety checkpoints based on the fact that their drivers are unlicensed. *See* Cal. Stats. 2011, c. 653 (A.B. 353) § 2 (codified at Cal. Veh. Code § 2814.2(c)) (providing that vehicles encountered at sobriety checkpoints that are driven by unlicensed drivers shall be released to a licensed driver or, if that is not possible, removed under § 22651(p)).

5. The Court GRANTS City Defendants' request for judicial notice of the record of Avendando Ruiz's conviction for violating § 12500(a). *See Lopez–Solis*, 447 F.3d at 1210 (9th Cir.2006). Their request is DENIED with respect to the police report and police department records. *See Perez–Corona*, 295 F.3d at 1001 at n. 4; *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir.1985).

complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(1) if Plaintiffs do not carry their burden to sufficiently allege subject matter jurisdiction. Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a complaint fails "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County,* 487 F.3d 1246, 1249 (9th Cir.2007). A complaint will survive a 12(b)(6) motion if its "non-conclusory factual content, and reasonable inferences from that content" plausibly suggest a claim entitling the plaintiff to relief. *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir.2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal quotation marks omitted).

## DISCUSSION

### A. Global arguments for dismissal

Defendants make several arguments for dismissal that apply to more than one of Plaintiffs' claims. The Court will address these arguments first, and then turn to Defendants' arguments for dismissal of each of the five counts set out in the complaint.[6]

#### 1. *Monell* claims against County Defendants

■ County Defendants move for the dismissal of Plaintiffs' § 1983 claims against the county and its officers acting in an official capacity, arguing that Plaintiffs have failed to allege plausible facts sufficient to support a claim that their injuries arose out of County Defendants' customs, practices, or policies. Section 1983 provides for a cause of action against any

"person" who, acting under the color of law, subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 claims against government officials in their official capacities "are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle,* 281 F.3d 1014, 1023 n. 8 (9th Cir.2002); *see also Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Under *Monell v. Department of Social Services,* § 1983 plaintiffs cannot state a claim for municipal liability based on a *respondeat superior* theory. 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, a municipal government entity may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. 2018.

The longstanding rule in the Ninth Circuit, set out in *Karim–Panahi v. Los Angeles Police Department,* was that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom or practice.'" 839 F.2d 621, 624 (9th Cir.1988), *quoting Shah v. County of Los Angeles,* 797 F.2d 743, 747 (9th Cir.1986). The Supreme Court, in *Leatherman v. Tarrant Narcotics Intelligence and Coordination Unit,* cited with approval to *Karim–Panahi* in rejecting a "heightened pleading standard" for *Monell* claims. 507 U.S. 163, 165–68, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). *Karim–Panahi* has not been overruled, but the Ninth Circuit

---

**6.** City Defendants have joined in County Defendants' arguments to the extent they are applicable to claims raised against them.

has recognized that, under the Supreme Court's recent pleading jurisprudence, it is no longer clear that, without more, an allegation that an officer's conduct "conformed to official policy, custom, or practice" continues to be sufficient to state a claim under *Monell. See A.E. ex rel. Hernandez v. County of Tulare,* 666 F.3d 631, 637–38 (9th Cir.2012); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

In *Starr v. Baca,* the Ninth Circuit attempted to reconcile the apparent inconsistency between the Supreme Court's decisions in *Twombly* and *Iqbal* and other recent cases in which the Court construed Rule 8(a) in a way that would permit more claims to survive a motion to dismiss. 652 F.3d 1202, 1213–16 (9th Cir.2011). In *Starr,* the court synthesized the following two-part rule:

> First, to be entitled to the presumption of truth, allegations in a complaint ... may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.* at 1216.

Recently, in *A.E. ex rel. Hernandez v. County of Tulare,* the Ninth Circuit applied the *Starr* standard to a *Monell* claim. 666 F.3d at 637–38. The plaintiff in *A.E.* was a minor who was sexually abused while in foster care. He alleged that the county was liable under *Monell* because the defendants "performed their acts and omissions 'under the ordinances, regulations, customs, and practices of Defendant COUNTY OF TULARE ...'" and

"'maintained or permitted an official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs'" that were alleged elsewhere in the complaint. *Id.* at 635 (quoting complaint). Applying *Starr,* the court held that these allegations were insufficient to state a claim, but it directed the district court to grant the plaintiffs leave to amend their complaint to state additional facts showing that the "alleged constitutional violations were carried out pursuant to County policy or custom." *Id.* at 637.

■ In the present case, as in *A.E.,* Plaintiffs base their *Monell* claims on the theory that County Defendants had deliberate customs, policies, or practices that were "the 'moving force' behind the constitutional violation [Plaintiffs] suffered." *Galen v. County of Los Angeles,* 477 F.3d 652, 667 (9th Cir.2007) (quoting *Monell,* 436 U.S. at 694–95, 98 S.Ct. 2018). But Plaintiffs' allegations, in contrast those offered by the plaintiffs in *A.E.,* specify the content of the policies, customs, or practices the execution of which gave rise to Plaintiffs' Constitutional injuries. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Plaintiffs allege that County Defendants "routinely enforce" § 14602.6 by:

> seizing and impounding vehicles on the basis that the driver does not have a current, valid California driver's license, including when the vehicle was not presenting a hazard or a threat to public safety; keeping the vehicle [even though] someone was available to pay the impound fee to date, usually for the 30 day period specified by § 14602.6; seizing and impounding vehicles even though the driver has previously been licensed, whether in California or a foreign jurisdiction; failing and refusing to [provide] a hearing on the justification for impounding the vehicle for 30 days; failing and refusing to provide notice of

the reason for impounding the vehicle for 30 days; and, on information and belief, charging an above-cost administrative fee.

(Docket No. 1, at p. 4.) These allegations, in contrast those set out by the plaintiffs in *A.E.*, specify the content of the policies, customs, or practices the execution of which gave rise to Plaintiffs' constitutional injuries. *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018. The allegations are sufficient to "give fair notice and to enable the opposing party to defend itself effectively," particularly since information relating to the policies, customs, and practices of County Defendants in enforcing § 14602.6 and related statutory sections is likely to be easily available to them. *Starr*, 652 F.3d at 1216. As to *Starr's* second prong—whether the allegations "plausibly suggest entitlement to relief"—it is inherently plausible that Plaintiffs' constitutional claims, which largely are based in the alleged misconstruction of or failure to comply with California statutory law, arose as a result of the County Defendants' customs, policies, or practices. *Id.* To the extent that Plaintiffs' allegations relating to each individual Constitutional claim satisfy Rule 8(a), plaintiffs therefore have pled facts sufficient to state a claim that County Defendants are liable under *Monell*.

**2. Claims based on County Defendants' enforcement of state law**

 County Defendants argue that the Eleventh Amendment bars Plaintiffs' claims for damages against the County of Sonoma, the Sonoma County Sheriff's Department ("SCSD"), and Sheriff Steve Freitas in his official capacity. Because an official-capacity suit against a state official is really a suit against the official's office, it "is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). For this reason, state officers acting in their official capacities are entitled to sovereign immunity from suits for damages under the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir.1997). Sovereign immunity generally does not extend to suits against local government entities because, as in the case of suits for injunctive relief and personal-capacity suits against state officials, "relief is not sought from the state treasury." *Alden v. Maine*, 527 U.S. 706, 756–57, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Unless they are considered part of the state for sovereign immunity purposes, local government entities, and officials with "final policymaking authority for the local governmental actor," may therefore be held liable under § 1983 for constitutional violations carried out pursuant to the locality's policies and customs. *McMillian v. Monroe County*, 520 U.S. 781, 784–85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *Monell*, 436 U.S. at 690 n. 54, 98 S.Ct. 2018 (1978). It follows that neither the County nor the SCSD enjoys blanket immunity from suit under the doctrine of state sovereign immunity. *See Streit v. County of Los Angeles*, 236 F.3d 552, 565 (9th Cir.2001) (holding that California sheriff's departments may be separately sued under § 1983).[7]

The more difficult question is whether Sheriff Freitas should be considered part of the state for sovereign immunity purposes—Defendants contend that he should,

---

7. Likewise, sheriffs' deputies are not immune from suit under the doctrine of state sovereign immunity. *See Venegas v. County of Los Angeles*, 32 Cal.4th 820, 839, 11 Cal.Rptr.3d 692, 87 P.3d 1 (2004) ("the parties have correctly assumed that the sheriff's deputies would not be shielded by the sheriff's own state agent immunity, and are 'persons' who may be held liable for damages under section 1983.")

and Plaintiffs that he should not. Plaintiffs' allegations against Sheriff Freitas, broadly writ, relate to the setting of policy and procedures governing the county's investigation of vehicle code violations and enforcement of the vehicle code. In *Brewster v. Shasta County*, the Ninth Circuit held that California sheriffs act on behalf of the county, not the state, when they investigate crimes, and are therefore not immune from suit under the doctrine of state sovereign immunity. 275 F.3d 803 (9th Cir.2001), *cert. denied Shasta County v. Brewster*, 537 U.S. 814, 123 S.Ct. 75, 154 L.Ed.2d 17 (2002). Subsequently, in *Venegas*, the California Supreme Court, expressly disagreeing with the Ninth Circuit's analysis and holding in *Brewster*, held that "California sheriffs act as state officers while performing state law enforcement duties such as investigating possible criminal activity." 32 Cal.4th at 830 & 839, 11 Cal.Rptr.3d 692, 87 P.3d 1.

Since *Venegas*, a division has arisen between district courts within the Circuit about which rule to apply. Many district courts have continued to apply the Ninth Circuit rule, holding that sheriffs performing law enforcement functions are county officers. *See, e.g., Galati v. County of San Mateo*, No. C07–4035, 2008 WL 1886033, at *6 (N.D.Cal. Apr. 25, 2008); *Garcia v. County of Merced*, 637 F.Supp.2d 731, 759–60 (E.D.Cal.2008); *Brown v. County of Kern*, No. C06–121, 2008 WL 544565, at *11–12 (E.D.Cal. Feb. 26, 2008); *Fontana v. Alpine County*, 750 F.Supp.2d 1148, 1153 (E.D.Cal.2010); *Shoval v. Sobzak*, No. C09–1348, 2009 WL 2780155, at *2 (S.D.Cal. Aug. 31, 2009); *Warner v. County of San Diego*, No. C10–1057, 2011 WL 662993, at *4 n. 2 (S.D.Cal. Feb. 14, 2011). Others, however, have applied *Venegas* and held that sheriffs performing law enforcement functions are officers of the state and therefore immune from suit. *See, e.g., Walker v. County of Santa Clara*, No. C04–2211, 2005 WL 2437037, at *4

(N.D.Cal. Sept. 30, 2005); *Comm. for Immigrant Rights of Sonoma County v. Sonoma County*, No. C08–4220, 2010 WL 2465030, at *3 (N.D.Cal. June 11, 2010); *Johnston v. County of Sonoma*, No. C10–3592, 2011 WL 855934, at *3 (N.D.Cal. March 9, 2011). The courts that have continued to apply the Ninth Circuit rule have reasoned that municipal liability under § 1983 is a question of federal law, and that, despite what the California Supreme Court may have said, they remain bound by *Brewster*. *See, e.g., Fontana*, 750 F.Supp.2d at 1153 (following *Brewster* because "the Ninth Circuit does not have to follow the determinations of the California courts in § 1983 lawsuits"); *Galati*, 2008 WL 1886033, at *6 (holding that "on this issue of federal law, the Court is bound by the decision of the Ninth Circuit in *Brewster*"). Those courts that have adopted the California Supreme Court's rule have concluded that the *Venegas* decision is correct, and by implication, that the Ninth Circuit got it wrong in *Brewster*. *See, e.g., Comm. for Immigrant Rights*, 2010 WL 2465030, at *3 (holding that *Venegas* "represents the correct statement of the function of California sheriffs"); *Walker*, 2005 WL 2437037, at *4 ("The California Supreme Court's decision comports with this court's understanding of the function of California sheriffs.")

■ The determination whether an official acts on behalf of a state or a county is "dependant on the definition of the official's functions under relevant state law." *McMillian*, 520 U.S. at 786, 117 S.Ct. 1734. This does not mean, however, that federal courts are bound by state court interpretations of state law in this context. In determining whether a local officer or entity is performing a state function, a federal court must conduct its own independent analysis of state law. *Id.; see also Streit*, 236 F.3d at 563.

In *Brewster*, the Ninth Circuit conducted an analysis of California state law and concluded that California sheriffs act on behalf of the county, not the state, when performing law enforcement functions. 275 F.3d at 805. The court based this conclusion on the following factors: money judgments against sheriffs are satisfied out of county, not state, funds; "the California Constitution clearly identifies the sheriff as a county officer"; "California sheriffs are elected county officers"; "California sheriffs are only obligated to attend courts within their respective counties"; impeachment proceedings against a sheriff are initiated by a county grand jury; county boards of supervisors exercise authority over the sheriff; and the funding for California sheriffs' departments, including funding for the enforcement of state criminal laws, comes from the county, not the state. 275 F.3d at 807–12. The dissenters in *Venegas* also concluded, based on the same provisions, that sheriffs act on behalf of counties, not the state, when they enforce state law. 32 Cal.4th at 851–62, 11 Cal.Rptr.3d 692, 87 P.3d 1 (Kennard, J. and Werdegar, J., dissenting in separate opinions).

■ *Venegas* does not provide a basis upon which this Court may reach a conclusion that is contrary to the Ninth Circuit's holding in *Brewster*. There is no indication that the Ninth Circuit's opinion in *Brewster* turned on California decisional law; in fact, the Brewster court considered and rejected the reasoning of the California cases upon which the majority in *Venegas* based its analysis. 275 F.3d at 809, 811; *see also Venegas*, 32 Cal.4th at 830–35, 11 Cal.Rptr.3d 692, 87 P.3d 1. The Ninth Circuit, sitting *en banc*, recently reaffirmed the rule that a published decision of a Ninth Circuit panel must be followed by panels and district courts within the Circuit "unless and until overruled by a body competent to do so." *Gonzalez v. Arizona*, 677 F.3d 383, 390 n. 4 (9th Cir.

2012) (en banc); *see also Streit*, 236 F.3d at 563. This Court lacks that particular competence, and therefore denies the motion to dismiss Plaintiffs' official-capacity claims against Sheriff Freitas.

### 3. Claims against Sheriff Freitas in his personal capacity

■ County Defendants move to dismiss Plaintiffs' personal-capacity claims against Sheriff Freitas on the ground that their allegations against him are conclusory. A supervisor can be held liable in his personal capacity under § 1983 "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation . . .; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (internal quotation marks and citation omitted). However, because there is no *respondeat superior* liability under § 1983, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937.

■ In the present case, Plaintiffs allege only that Freitas is "the Sheriff of Sonoma County, and the SCSD policymaker" and that he "is responsible for enforcing SCSD policies on the interpretation and/or application of Cal. Veh. Code 14602.6" and "has ratified or approved of the unconstitutional acts complained of herein." (Docket No. 1, at ¶ 9.) Plaintiffs fail to allege the specific policies interpreting § 14602.6 for which Freitas is responsible. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir.2012) (holding that allegation of a specific policy for which a personal-capacity defendant is responsible is necessary to survive a 12(b)(6) motion). Plaintiffs' allegation that Freitas ratified

or approved the unconstitutional acts alleged in the complaint is likewise conclusory; plaintiffs have not alleged any facts showing that Freitas was aware of the impoundment of Mateos–Sandoval's truck and his attempts to reclaim it, much less that he personally approved of the actions of his subordinates. *See id.* (holding that "[e]ven under a 'deliberate indifference' theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates"). In short, Plaintiffs' conclusory allegations related to Freitas are insufficient to state a claim for individual liability under 42 U.S.C. § 1983. *See id.* The Court will therefore grant dismissal of Plaintiffs' personal-capacity claims against Freitas without prejudice.[8]

### 4. Claims by Avendando Ruiz against City Defendants

 City Defendants argue that some or all of Avendando Ruiz's claims against them are barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).[9] In *Heck,* the Court held that a claim brought in a civil suit must be dismissed if a judgment in favor of the plaintiff on that claim would "necessarily imply the invalidity of his conviction or sentence," if that conviction or sentence had not already been invalidated. *Id.* at 487, 114 S.Ct. 2364. City Defendants' argument appears to be that a judgment in favor of Avendando Ruiz would necessarily imply the invalidity of this conviction under § 12500(a) for driving without a valid California driver's license, since the California Vehicle Code authorizes the impoundment of vehicles driven in violation of § 12500(a) and sets out the procedures for challenging an impoundment. This argument makes no sense. Plaintiffs' claims challenge the constitutionality of City Defendants' impoundment of Avendando Ruiz's truck, the procedures they provided to him for contesting the impoundment, and the fee he was required to pay to retrieve his truck. That state statutory law authorizes a procedure does not, in and of itself, render the procedure constitutional. *See United States v. Cervantes,* 703 F.3d 1135, 1142 (9th Cir.2012) (observing that "[t]he fact that an impoundment complies with a state statute or police policy, by itself, is insufficient to justify an impoundment" under federal constitutional law); *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 668 n. 5, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) ("[T]here cannot exist under the American flag any governmental authority untrammeled by the requirements of due process") (internal quotation marks and citation omitted). Therefore, Avendando Ruiz's § 12500(a) conviction would not be undermined by a ruling in Plaintiffs' favor on any of their claims. The *Heck* bar does not apply.

### 5. Requests for declaratory and injunctive relief

 Plaintiffs allege that § 14602.6 is unconstitutional on its face, and they request declaratory relief and an injunction preventing its enforcement. County Defendants, citing *Los Angeles v. Lyons,* 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), argue that Plaintiffs do not have standing to seek prospective

---

**8.** County Defendants also argue that Freitas is entitled to qualified immunity. Since the Court dismisses Plaintiffs' personal-capacity claims against Freitas based on the conclusory nature of their allegations against him, this alternative argument need not be addressed now.

**9.** It is unclear from City Defendants' papers which of Avendando Ruiz's claims they believe are barred by *Heck.* At oral argument, they asserted that *Heck* barred all of his claims against them.

relief. Under *Lyons,* plaintiffs seeking prospective relief must demonstrate a realistic likelihood that there will be a repetition of the alleged past violation of constitutional rights. *Id.* at 109, 103 S.Ct. 1660. In determining whether such a realistic likelihood exists, courts must assume that plaintiffs " 'will conduct their activities within the law so as to avoid prosecution and conviction as well as exposure to the challenged course of conduct. . . .' " *Id.* at 102, 103 S.Ct. 1660 (*quoting O'Shea v. Littleton,* 414 U.S. 488, 497, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

County Defendants point out that Plaintiffs' standing to pursue their requests for prospective relief must be based on an allegation that § 14602.6 will be applied to them in the future. By its terms, § 14602.6 applies only to individuals who are operating their vehicles in violation of California law. Plaintiffs have not alleged any facts suggesting that they will continue to operate their trucks illegally, and the Court must assume that they will conform their future conduct to the law. *Id.* Therefore, Plaintiffs have not adequately pled the actual controversy that is required for standing to pursue their claims for prospective relief. *See id.* at 104, 103 S.Ct. 1660; *see also Spencer v. Kemna,* 523 U.S. 1, 15, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (holding that plaintiff did not satisfy the case-or-controversy requirement for standing when threat of future harm was contingent on "violating the law, getting caught, and being convicted"). The Court will dismiss Plaintiffs' claims for declaratory and injunctive relief without prejudice.

### 6. State-law claims for damages

 County Defendants move to dismiss Plaintiffs' state-law claims for damages on the ground that they have failed to adequately allege compliance with the Government Tort Claims Act, Cal. Gov't Code § 810, *et seq.* The Act provides, in pertinent part, that "no suit for money or damages may be brought *against* a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . ." Cal. Gov't Code § 945.4. Plaintiffs' state-law claims, which are brought under California Civil Code § 52.1, are subject to this requirement. *Gatto v. County of Sonoma,* 98 Cal.App.4th 744, 763, 120 Cal.Rptr.2d 550 (2002). Hence, to state a claim against a public entity or a public employee acting within the scope of employment, plaintiffs must either allege compliance with the Act or that such compliance should be excused. *California v. Superior Ct. (Bodde),* 32 Cal.4th 1234, 1239, 13 Cal.Rptr.3d 534, 90 P.3d 116 (2004). Plaintiffs do not oppose dismissal of their state-law claims for failure to properly allege compliance with the Act, so long as dismissal is with leave to amend. Accordingly, the Court will dismiss Plaintiffs' state-law claims without prejudice.

### 7. Claims by Avendando Ruiz against County Defendants and by Mateos–Sandoval against City Defendants

County Defendants argue that Avendando Ruiz has failed to state a claim against them because he does not allege that he suffered any harm resulting from actions taken by them, as opposed to City Defendants. Similarly, the complaint contains no allegation from which a reasonable inference might be drawn that City Defendants' conduct resulted in harm to Mateos–Sandoval. Avendando Ruiz's claims against County Defendants and Mateos–Sandoval's claims against City Defendants are therefore dismissed without prejudice. *See Hunt v. County of Orange,* 672 F.3d 606, 617 (9th Cir.2012) (a court may *sua sponte* dismiss a claim under Rule 12(b)(6)

"when it is clear that the plaintiff has not stated a claim upon which relief may be granted").

## B. Arguments for dismissal of specific claims

Having addressed all of Defendants' arguments for dismissal that apply to multiple claims, the Court now turns to the specific claims set out in the complaint. Plaintiffs' complaint encompasses five separate counts, each count alleged against all defendants. These are: (1) unlawful seizure and impoundment of Plaintiffs' vehicles in violation of the Fourth Amendment; (2) uncompensated taking of Plaintiffs' vehicles in violation of the Fifth Amendment; (3) deprivation of due process with regard to the storage hearing; (4) deprivation of due process by seizing the vehicles as punishment for a criminal violation; and (5) deprivation of due process by imposing a fee in excess of the administrative costs associated with the seizure and impoundment. County Defendants urge the Court to dismiss each count for failure to state a claim. City Defendants join County Defendants' arguments and request dismissal of all the claims, but do not argue any specific basis for dismissal of counts one, four, and five beyond their *Heck* argument, which is addressed above.

### 1. Unlawful seizure and impoundment of Plaintiffs' trucks

In Count One of the complaint, Plaintiffs claim that the seizure of their trucks violated the Fourth Amendment because, at the time of impoundment, neither truck was impeding traffic, threatening public safety, or in a location where it would be susceptible to vandalism. Mateos–Sandoval additionally alleges that a licensed California driver was present who could have driven his truck away.

■■■ The impoundment of a vehicle is a seizure under the Fourth Amendment, and therefore must be reasonable. *See Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir.2005); *Soldal v. Cook County*, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). Warrantless seizures are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir.2001) (internal quotation marks and citation omitted). In their motion to dismiss, County Defendants argue that two exceptions to the warrant requirement apply. They first contend that the impoundment of Mateos–Sandoval's truck constituted a valid administrative penalty, and second, that it comported with the community caretaking doctrine.

#### a. Impoundment as administrative penalty

■■■ County Defendants argue that their thirty-day impoundment of Mateos–Sandoval's truck under § 14602.6 constituted a facially valid administrative penalty, and as such, was reasonable under the Fourth Amendment. Plaintiffs argue that, regardless of whether the provision is facially valid, § 14602.6 did not authorize the thirty-day impoundment of Mateos–Sandoval's truck.

Section 14602.6 permits peace officers to impound for thirty days vehicles driven by three categories of drivers: (1) those whose driving privilege has been suspended or revoked, (2) those who have been convicted of driving under the influence and who are driving a vehicle that is not equipped with a required ignition interlock device, and (3) those who are "driving a vehicle without ever having been issued a driver's license." Cal. Veh. Code § 14602.6(a)(1). County Defendants argue that the Court should read the third category of drivers to encompass individuals who have "been issued a driver's license"

by a jurisdiction outside of California. Plaintiffs observe that, on its face, the third category only includes drivers who have never "been issued a driver's license," and argue that it therefore cannot be invoked as authorization for the impoundment of Mateos–Sandoval's truck.

In interpreting California statutes, federal courts apply California rules of statutory construction. *Turnacliff v. Westly*, 546 F.3d 1113, 1117 (9th Cir.2008). To ascertain the meaning of a statute, California courts first "look to the intent of the Legislature as expressed by the actual words of the statute" because "it is the language of the statute itself that has successfully braved the legislative gauntlet." *Wasatch Prop. Mgmt. v. Degrate*, 35 Cal.4th 1111, 1117, 29 Cal.Rptr.3d 262, 112 P.3d 647 (2005) (internal quotation marks and citation omitted). If a statute's language is "clear and unambiguous, there is no need for construction, and courts should not indulge in it." *People v. Belleci*, 24 Cal.3d 879, 884, 157 Cal.Rptr. 503, 598 P.2d 473 (1979) (internal quotation marks and citation omitted); *see also California Ins. Guar. Ass'n v. Workers' Comp. Appeals Bd.*, 128 Cal.App.4th 307, 312, 26 Cal.Rptr.3d 845 (2005). California courts give statutory language "its usual, ordinary import," construing statutory provisions in context and keeping in mind the statute's purpose. *Dyna–Med, Inc. v. Fair Emp't & Housing Comm'n*, 43 Cal.3d 1379, 1387, 241 Cal.Rptr. 67, 743 P.2d 1323 (1987). To the extent possible, "statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other." *Id.* A court may not resort to extrinsic sources, such as legislative history, to determine the Legislature's intent unless an interpretation based on a provision's unambiguous language and statutory context would inevitably frustrate the legislation's manifest purpose or lead to absurd results. *See Id.; Kavanaugh v. West Sonoma County Union High Sch. Dist.*, 29 Cal.4th 911, 924, 129 Cal.Rptr.2d 811, 62 P.3d 54 (2003).

The language of the provision at issue here is unambiguous: it permits the impoundment for thirty days of vehicles driven by individuals who are "driving a vehicle without ever having been issued a driver's license." Cal. Veh. Code § 14602.6(a)(1). The section's plain meaning is confirmed by reference to the Vehicle Code's definition of "driver's license": "a valid license to drive ... under this code or by a foreign jurisdiction." Cal. Veh. Code § 310. This definition governs the construction of § 14602.6 and is binding on the Court. *See* Cal. Veh. Code § 100 (providing that "[u]nless the provision or context otherwise requires" the definitions contained in the Vehicle Code "shall govern [its] construction"); *Curle v. Superior Court*, 24 Cal.4th 1057, 1063, 103 Cal.Rptr.2d 751, 16 P.3d 166 (2001) ("If the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts."). The definition of "driver's license" in § 310 confirms that the Legislature intended § 14602.6 to apply to individuals who are "driving a vehicle without *ever* having been issued [a valid license to drive ... under the California Vehicle Code *or by a foreign jurisdiction* ]" (emphasis added).[10] Since Mateos–Sandoval plausibly alleges that, before his truck was impounded, he had "been issued a driver's license" by a foreign jurisdiction, County Defendants cannot invoke § 14602.6 to justify their impoundment of his truck.[11]

---

10. Vehicle Code § 325 defines "foreign jurisdiction" as "any other state, the District of Columbia, territories or possessions of the United States, and foreign states, provinces, or countries."

11. Interpreting § 14602.6(a) as applying to any individual who has not been issued a California driver's license, as opposed to a license by any jurisdiction, would lead to ano-

Statutory context sheds light on the Legislature's intent in authorizing the thirty-day impoundment of vehicles driven by individuals who have never been issued a driver's license in any jurisdiction. As a California Court of Appeal has observed, § 14602.6 "demonstrates a legislative effort to make a distinction designed to reduce accidents by keeping the most dangerous drivers off the road." *Alviso v. Sonoma County Sheriff's Dept.*, 186 Cal. App.4th 198, 207, 111 Cal.Rptr.3d 775 (2010). Driving by individuals whose licenses have been suspended or revoked, or who have been convicted of driving under the influence and do not have a legally required ignition interlock device, poses an obvious public safety hazard, as does unlawful driving by individuals who have never been licensed to drive. These same public safety concerns are not implicated when individuals with out-of-state or foreign licenses take the wheel.

The existence of a separate provision in the California Vehicle Code authorizing the impoundment of vehicles driven by unlicensed drivers further confirms that the Legislature intended § 14602.6 to apply only to a subset of unlicensed drivers whose driving raises particular public safety concerns. Section 22651(p)—which was enacted prior to § 14602.6 and was amended by the bill in which § 14602.6 was enacted—permits a peace officer to "remove" a vehicle "when the peace officer issues the driver of the vehicle a notice to appear for a violation of § 12500 [driving without a valid California Driver's license]" among other offenses.[12] 1994 Stat., ch. 1221, § 16. In contrast to § 14602.6(a), § 22651(p) permits the release of the vehicle to a licensed driver at any time. The contrast between the language of the two provisions demonstrates that, had the Legislature intended § 14602.6(a) to be applicable to all individuals who are driving without valid California driver's licenses, it would have made reference to § 12500, as it did in § 22651(p).[13] That the Legislature chose instead to use the phrase "without ever having been issued a driver's license" in § 14602.6 indicates that it intended the preexisting § 22651(p) to govern the removal of vehicles driven by individuals with expired licenses and licenses issued by jurisdictions outside of California, and to limit the application of the new § 14602.6 to drivers who have never been issued a driver's license in any jurisdiction.[14]

malous results. On the face of § 14602.6(a), there is no basis for drawing a distinction between resident and non-resident drivers. The Vehicle Code exempts from the purview of § 12500 (prohibiting driving without a valid California driver's license) individuals who are not California residents and are licensed to drive in other states or countries. Cal. Veh. Code § 12502(a)(1). Residency is defined as "a person's state of domicile." *Id.* If the statutory section read "driving a vehicle without ever having been issued a *California* driver's license," it would authorize the thirty-day impoundment of a vehicle driven by a California non-resident who was not violating § 12500.

12. The discretion afforded to officers to impound a vehicle under § 22651(p) must be exercised in accordance with the community caretaking doctrine. *See People v. Benites,* 9 Cal.App.4th 309, 327, 11 Cal.Rptr.2d 512

(1992); *People v. Williams,* 145 Cal.App.4th 756, 52 Cal.Rptr.3d 162 (2006) (section 22651(h)(1)).

13. The phrase "unlicensed driver" is used in various sections of the Vehicle Code to describe drivers who are not in possession of valid California driver's licenses, in violation of § 12500. *See, e.g.,* Cal. Veh. Code §§ 40000.11; 2814.2(c); 14607.8. The Legislature's choice to use the phrase "without ever having been issued a driver's license" rather than "unlicensed driver" in § 14602.6(a)(1) further demonstrates its intention that the provision apply to a particular subset of unlicensed drivers—those who have never been issued a license in any jurisdiction.

14. County Defendants do not contend that § 14602.6 authorizes the impoundment of ve-

County Defendants argue that to determine the Legislature's intent in enacting § 14602.6, the Court should examine its legislative history. Because the provision's plain language meaning is clear, is confirmed by its statutory context, and does not frustrate manifest legislative intent or lead to absurd results, examination of the provision's legislative history is not warranted. *See Kavanaugh,* 29 Cal.4th at 924, 129 Cal.Rptr.2d 811, 62 P.3d 54; *Belleci,* 24 Cal.3d at 884, 157 Cal.Rptr. 503, 598 P.2d 473. But even if it were proper to examine the legislative history of § 14602.6, the exercise would be of little help to County Defendants. They have not pointed to any document in the legislative history of § 14602.6(a)(1) that sheds light on the Legislature's reasons for making the thirty-day impoundment period apply to individuals who had never been issued a driver's license. Nor have they identified any reference to individuals driving on foreign or out-of-state licenses.

The documents to which County Defendants have directed the Court's attention do, however, confirm that § 14602.6 was enacted for the purpose of keeping particularly dangerous drivers off the road. Section 14602.6 was added to the California Vehicle Code by chapter 1221, § 13 of the Statutes of 1994 ("SB 1758").[15] In a letter to the Governor urging him to sign SB 1758, the bill's author, Senator Quinten L. Kopp, stated, "SB 1758 is a measure designed to crack down on persons who defy the law by operating vehicles with suspended or revoked licenses," and in a statement to the Senate in support of the bill, Senator Kopp referenced a December 1990 Department of Motor Vehicles study showing that disqualified drivers were disproportionately involved in fatal accidents.[16] Letter from Sen. Quintin L. Kopp to Gov. Pete Wilson (Sept. 7, 1994); Author's Statement, Floor Analysis of Sen. Bill no. 1758 (1993–94 Reg. Sess.), as amended Aug. 8, 1994, at p. 4; *see also* California Highway Patrol, Enrolled Bill Report, SB 1758 (1993–94 Reg. Sess.), as amended August 29, 1994, at p. 3.[17]

Taking as true Mateos–Sandoval's allegation that he had a Mexican driver's license, the impoundment of his truck was not authorized by § 14602.6. County Defendants therefore cannot justify the thir-

hicles driven by individuals with expired California drivers' licenses.

**15.** County Defendants cite to Vehicle Code § 14607.4(f) as evidence of the Legislature's intent in enacting SB 1758, but that provision was enacted as part of a different bill, AB 3148, 1994 Leg., 1993–94 Reg. Sess. (Cal. 1994).

**16.** SB 1758 implemented several recommendations made this study, the aim of which was to identify and evaluate mechanisms for deterring driving by individuals whose licenses had been suspended or revoked, particularly as a result of convictions for driving under the influence. *See* California Department of Motor Vehicles, Development, Implementation, and Evaluation of a Pilot Project to Better Control Disqualified Drivers (December 1990). The DMV study suggested increased use of impoundment as a means to "remove suspension violators from the road and deter would-be violators from driving"; it made no mention of individuals driving with out-of-state or foreign licenses. *Id.* at 106.

**17.** County Defendants point out that, as originally enacted, the provision at issue in this case read "without ever having been issued a license." The word "driver's" was added by Assembly Bill 360 in 2001. *See* AB 360, Ch. 480, § 1 (Oct. 4, 2001). The amendment appears to have been purely technical in nature: the legislative history of AB 360 is devoid of any reference to the Legislature's reasons for adding the word "driver's" to § 14602.6(a)(1). In the statute as originally enacted, the word "license" obviously referred to driver's licenses and not to dog licenses or liquor licenses. As County Defendants acknowledge, the 2001 amendment did not in any way alter the provision's meaning.

ty-day impoundment of his truck by reference to § 14602.6, and the Court may not decide whether the provision is facially valid as an administrative penalty. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The impoundment of Mateos–Sandoval's truck was lawful only if it was justified by community caretaking concerns.[18]

### b. Impoundment under the community caretaking doctrine

 County Defendants argue that Plaintiffs have failed to state a claim against them because the impoundment of Mateos–Sandoval's truck was justified by community caretaking concerns. The community caretaking doctrine "allows the police to impound where necessary to ensure that the location or operation of vehicles does not jeopardize the public safety." *Miranda*, 429 F.3d at 860. Police may impound a vehicle under the community caretaking doctrine if the vehicle presents a traffic hazard or public safety concern and the driver cannot lawfully operate the vehicle in order to move it to a safe location. *Id.* at 865. In *Miranda*, the Ninth Circuit held that the impoundment of a vehicle from its owners' driveway after a police officer had observed a licensed driver teaching his unlicensed wife how to drive was not justified by the community caretaking doctrine. *Id.* The Court reasoned that, even when the driver of a vehicle is unlicensed, "[a]n officer cannot reasonably order an impoundment in situa-

tions where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers." *Id.* at 866. Rather, "the decision to impound a vehicle after the driver has violated a vehicle regulation must consider the location of the vehicle, and whether the vehicle was actually 'impeding traffic or threatening public safety and convenience.'" *Id.* at 865 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)).

Similarly, in *United States v. Caseres*, the court held that there was no community caretaking rationale for the impoundment of a vehicle that was legally parked on a residential street two blocks from the driver's home and was not posing a hazard or impediment to other traffic, even though the vehicle's driver had a suspended license. 533 F.3d at 1075. The court reasoned that the rationale of impounding a vehicle for the purpose of deterring unlawful driving is inconsistent with the community caretaking function. *Id.*

Applying *Miranda* and *Caseres*, the Ninth Circuit recently held in *Cervantes* that the community caretaking exception did not justify the impoundment of a vehicle that had been "appropriately pulled to the curb" when stopped in a residential neighborhood that was not near the driver's home. 703 F.3d at 1141–43. The court rejected the Government's attempt

---

**18.** County Defendants appear to assume that if the impoundment of Mateos–Sandoval's vehicle was carried out in accordance with § 14602.6, they would not need to show that the impoundment otherwise comported with the Fourth Amendment. However, as the Ninth Circuit has observed, "the decision to impound pursuant to the authority of a city ordinance or state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment." *Miranda*, 429 F.3d at 864. The authority to impound a vehicle under § 14602.6 is discre-

tionary. *Cal. Highway Patrol v. Superior Court*, 162 Cal.App.4th 1144, 1148, 76 Cal. Rptr.3d 578 (2008) ("If an officer decides not to impound a car under the discretionary authority provided by section 14602.6(a)(1), it is not 'so impounded' and therefore the thirty-day provision is inapplicable."). The discretion to order the seizure of a vehicle under state law is confined by the requirements of the Fourth Amendment. *See United States v. Caseres*, 533 F.3d 1064, 1074–75 (9th Cir. 2008); *Williams*, 145 Cal.App.4th at 761–63, 52 Cal.Rptr.3d 162.

to justify the impoundment by citing to § 14602.6 and the local police department's impoundment policy, noting that it was not clear that the officers complied with § 14602.6, because at the time the vehicle was impounded, its driver had not yet been placed under arrest. *Id.* The court further observed that, even if the officers had complied with § 14602.6, compliance with state law and local policy does not alone justify impoundment under the community caretaking doctrine. *Id.*

■ County Defendants argue that the impoundment of Mateos–Sandoval's vehicle was justified on community caretaking grounds because "he does not allege that he could have left his vehicle legally parked where he pulled over during the traffic stop." [19] (Docket No. 20, at p. 15–16.) However, the complaint states that Mateos–Sandoval's vehicle was "stopped at the Santa Rosa curb in a safe and legal location, not blocking traffic, directly in front of a Redwood Credit Union car lot." (Docket No. 1, at ¶ 15.) It is not too great a leap to infer from this allegation that Mateos–Sandoval's truck was legally parked. Moreover, County Defendants' assumption that Mateos–Sandoval would have been required to leave his truck at the site of the stop is unfounded: his friend Ortiz, who had a valid California driver's license, was present and had offered to drive his truck away. County Defendants have not proffered, and the Court cannot discern, a community caretaking function that would be served by the impoundment of a legally parked vehicle from a public street, when a licensed driver is available to drive the vehicle away. In sum, based on the facts alleged in the complaint, the impoundment of Mateos–Sandoval's vehicle cannot be justified on community caretaking grounds.

Plaintiffs also argue that even if the initial seizure of their vehicles were reasonable, the decision to retain their vehicles for thirty days, when they were prepared to pay the required fine and had a licensed driver available to drive the car away from the lot, was not. The Supreme Court has held that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Jacobsen,* 466 U.S. 109, 124–25, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The Ninth Circuit recently applied this rule in a case involving the City of Los Angeles's confiscation and subsequent destruction of the personal possessions of homeless people that were temporarily left on city sidewalks, *Lavan v. City of Los Angeles,* 693 F.3d 1022, 1030 (9th Cir.2012). In *Lavan,* the court held that "even if the seizure of the property would have been deemed reasonable had the City held it for the return to its owner instead of immediately destroying it, the City's destruction of the property rendered the seizure unreasonable." *Id.* In the context of the present case, the discretion to impound a vehicle for thirty days under § 14602.6 must be exercised within the limits imposed by the Fourth Amend-

19. County Defendants also argue that the impoundment was permissible under the community caretaking doctrine because Mateos–Sandoval left his work tools in the back of his truck. Mateos–Sandoval's tools are nowhere mentioned in the complaint, and so cannot form a basis for granting a motion to dismiss. *See supra* n. 3. Moreover, there is no indication that Mateos–Sandoval's truck would have remained parked in a public location had County Defendants not impounded it: Mateos–Sandoval was not taken into custody, and so could have stayed with his tools, and Mateos–Sandoval's friend, a licensed California driver, was present and could have driven his vehicle away. County Defendants' argument about the need to protect Mateos–Sandoval's tools is blatantly pretextual.

ment's reasonableness requirement. *Cf. Cervantes*, 703 F.3d at 1141–42; *Cal. Highway Patrol*, 162 Cal.App.4th at 1151–52, 76 Cal.Rptr.3d 578 (2012). Since the Court has held that, taking the facts in the light most favorable to Plaintiffs, they have stated a Fourth Amendment claim against County Defendants based on the initial seizure of Mateos–Sandoval's truck, it need not determine at this juncture whether, if the initial seizure were lawful, Plaintiffs' Fourth Amendment claim could proceed based solely on County Defendants' decision to impound Mateos–Sandoval's vehicle for thirty days.

Because community caretaking concerns did not justify the impoundment of Mateos–Sandoval's truck in the circumstances alleged in the complaint, County Defendants' motion to dismiss Mateos–Sandoval's unlawful seizure claim is denied.

### 2. Uncompensated taking of Plaintiffs' vehicles.

■ In Count Two of their complaint, Plaintiffs allege that the impoundments of their respective vehicles constituted uncompensated takings for public use, in violation of the Fifth Amendment's takings clause. The takings clause applies to two types of government action—the taking of physical possession of property, or of an interest in that property, for a public use and the regulatory prohibition of a private use. *See Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321–23, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002). The first type of taking occurs through the physical appropriation of property. The second type—regulatory taking—involves state imposition of a regulation that prohibits or prevents property owners from using their property in a way that diminishes its value. The impoundments at issue in the present case fall into the first category: it is not disputed that Plaintiffs had a property interest in their trucks, and Defendants deprived them of

that interest by impounding their trucks. *See Ark. Game and Fish Comm'n v. United States*, —— U.S. ——, 133 S.Ct. 511, 515, 184 L.Ed.2d 417 (2012) ("[I]f government action would qualify as a taking when permanently continued, temporary actions of the same character may also qualify as a taking.").

Defendants argue that Plaintiffs are not entitled to just compensation for the takings of their trucks because they were not taken for "public use." The Supreme Court has construed the public use requirement broadly. *See Kelo v. City of New London*, 545 U.S. 469, 483, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005) (noting that Court's "public use jurisprudence has … eschewed rigid formulas and intensive scrutiny in favor of affording legislatures broad latitude in determining what public needs justify the use of the takings power"); *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 240, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (holding that the scope of the "public use" requirement of the takings clause is "coterminous with the scope of the sovereign's police powers"). However, the requirement has not been construed so broadly as to encompass the government's acquisition of property as a result of a lawful forfeiture. In *Bennis v. Michigan*, the Court considered whether the state's forfeiture of a woman's interest in a car constituted a "public use." The state trial court ordered the sale of the car pursuant to an indecency statute after her husband had sex with a prostitute in it while it was parked on a Detroit city street. 516 U.S. 442, 453, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996). Having determined that the sale did not violate the Fourteenth Amendment's due process clause, the Court further held:

> [I]f the forfeiture proceeding here in question did not violate the Fourteenth Amendment, the property in the automobile was transferred by virtue of that

proceeding from petitioner to the State. The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain. *Bennis,* 516 U.S. at 452, 116 S.Ct. 994. Similarly, in *Tate v. District of Columbia,* the D.C. Circuit held that the impoundment and sale of a plaintiff's vehicle as a result of unpaid traffic fines did not "constitute a taking for public use for which she was entitled to compensation under the Fifth Amendment's Takings Clause." 627 F.3d 904, 909 (D.C.Cir.2010). The Court reasoned that "if the [government's] impoundment of Tate's vehicle did not deprive her of due process … then there was no unlawful taking and no compensation due for the lawful taking that did occur." *Id.*

▮ In the present case, if Plaintiffs can prove their Fourth Amendment claim, then Defendants' interference with their property rights—the impoundment of their trucks—was unlawful. But that does not mean that the taking was "for public use." The takings clause only "requires compensation in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 543, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). The "public use" requirement "goes to the legitimacy of the government's taking to begin with; if a taking is not for public use, the government has no right to complete the act of eminent domain." *Lee v. City of Chicago,* 330 F.3d 456, 475 (7th Cir.2003) (Wood, J., concurring). The unlawful seizure of property does not constitute a "public use."

▮ If, on the other hand, Plaintiffs ultimately fail to prove their Fourth Amendment claim, their takings clause claim would also fail because Defendants lawfully acquired their trucks "under the exercise of governmental authority other

than the power of eminent domain." *Bennis,* 516 U.S. at 452, 116 S.Ct. 994.

▮ To be clear, as a general matter, the applicability of one constitutional amendment does not preclude a claim under another. *See Soldal,* 506 U.S. at 70, 113 S.Ct. 538. But based on the facts alleged in the complaint, Plaintiffs' takings clause claim cannot proceed under any theory of liability. It will therefore be dismissed without prejudice.

### 3. Deprivation of Due Process—storage hearing

In Count Three of their complaint, Plaintiffs raise several due process challenges relating to the procedures that were afforded to them for contesting the impoundments of their trucks: (1) Plaintiffs were not provided notice that mitigating circumstances could be considered during the storage hearing; (2) Defendants have a practice of not considering mitigating circumstances; (3) the term "mitigating circumstances" is vague and arbitrary; and (4) the hearing officers are biased because they work for the same agency as the officers who effect the impoundments. Defendants move to dismiss all four components of this count.

▮ First, Defendants argue that statutory law and case law provide adequate notice that mitigating circumstances will be considered. The Supreme Court has held that individualized notice "of state-law remedies … established by published, generally available state statutes and case law" is not required. *City of West Covina v. Perkins,* 525 U.S. 234, 241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). Section 14602.6(b) provides that the vehicle's owner "shall be provided the opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the storage, in accordance with Section 22852." As the Califor-

nia court of appeal observed in *Samples v. Brown*, "section 14602.6(b) directs the impounding agency to consider facts or situations that might reduce the culpability of the owner and warrant the early release of an impounded vehicle." 146 Cal.App.4th 787, 802, 53 Cal.Rptr.3d 216 (2007). This statutory and case law constitutes constitutionally sufficient notice of the right to contest the duration of the impoundment of a vehicle based on mitigating circumstances.

Second, Defendants argue that Plaintiffs have failed to allege facts suggesting that mitigating circumstances were not considered at Plaintiffs' storage hearings. Plaintiffs do not allege that Avendando Ruiz had a storage hearing. With respect to Mateos–Sandoval, Plaintiffs allege only that "on February 1, 2011 and February 3, 2011, SCSD re-affirmed that the 30 day impound under Veh. Code § 14602.6 was justified and required notwithstanding that Mr. Sandoval[ ] had [a] Mexican driver's license." (Docket No. 1, at ¶ 20.) This allegation is insufficient to support a claim that County Defendants deprived Mateos–Sandoval of an opportunity to present mitigating circumstances. Because Plaintiffs do not specify whether Mateos–Sandoval or Avendando Ruiz had a storage hearing, and, if so, whether they presented, or attempted to present, any mitigating circumstances for Defendants' consideration, they have failed to state a claim.

■■■ Third, Defendants argue that the term "mitigating circumstances" is not unconstitutionally vague. The term "mitigating circumstances" is widely used, and examples of mitigating circumstances in the context of impoundments under § 14602.6 are set out in the statute and in case law. *See* Cal. Veh. Code § 14602.6(d), (e) & (f) (identifying specific circumstances under which owners may obtain release of a vehicle prior to the expiration of the thirty-day impoundment period); *Smith v. Santa Rosa Police Dept.*, 97 Cal.App.4th 546, 549–50, 119 Cal.Rptr.2d 72 (2002) (owner's lack of knowledge that the license of vehicle's driver was invalid constituted mitigating circumstance); *Samples*, 146 Cal. App.4th 787, 53 Cal.Rptr.3d 216 (reversing trial court holding that "mitigating circumstances" in the context of § 14602.6(b) was unconstitutionally vague). The term "mitigating circumstances" is not unconstitutionally vague on its face, and Plaintiffs have not specified in what way any latent ambiguity in the term deprived them of due process.

Fourth, Defendants argue that Plaintiffs have insufficiently pled that the hearing officers at Plaintiffs' impoundment hearings were biased. As discussed above, Plaintiffs have not even pled that they had hearings to contest the impoundments of their trucks. Their allegations are therefore insufficient to support a claim that the officers who heard their claims, presuming such officers existed, were biased.

For the foregoing reasons, Defendants' motions to dismiss Count Three of the complaint will be granted, and Count Three will be dismissed without prejudice.

### 4. Deprivation of Due Process—impoundment as punishment

In Count Four of their complaint, Plaintiffs allege that Defendants' thirty-day impoundment of their trucks violates the due process clause to the extent that the purpose of an impoundment under § 14602.6 is punishment for driving without a valid license. Plaintiffs also argue that if the purpose of an impoundment under § 14602.6 is punishment, they are entitled to notice that they were accused of a crime and a hearing at which they were not presumed to be guilty, which they allege that they did not receive.

County Defendants argue that, under Ninth Circuit precedent, there is no proce-

dural due process right to a pre-impoundment hearing. In support of this proposition, County Defendants cite to *Goichman v. Rheuban Motors, Inc.*, in which the court held that the requirement that a hearing be provided within 48 hours after the seizure of an illegally parked vehicle satisfied the due process clause. 682 F.2d 1320, 1325 (9th Cir.1982). However, the Ninth Circuit subsequently has clarified that whether a pre-impoundment hearing is required may depend on whether the seizure was justified under the community caretaking doctrine. In *Miranda*, the court distinguished *Goichman* as follows:

> Impoundment of a vehicle left in a public place or a vehicle for which there is no licensed driver ... [is] likely justified by the need to respond immediately to the hazard or public safety threat caused by the location of the vehicle[ ], which would be incompatible with a requirement of notice and a hearing beforehand. However, the novel question, squarely presented in this case, of whether a pre-deprivation hearing is required for an impoundment from the driveway of the owners' home, cannot be resolved without more factual development and a more detailed analysis of the competing interests involved. Because Defendants have not provided us with a legitimate caretaking purpose in impounding the car, the question whether a pre-deprivation hearing was required for the Mirandas' case cannot be properly determined on the record before us.

*Miranda*, 429 F.3d at 867. The court directed the district court, on remand, to "determine whether any legitimate caretaking purpose offered by Defendants outweighs the affected private interest of the Mirandas in uninterrupted possession of their car and the risk of erroneous deprivation." *Id.* at 867–68.

As discussed above, based on the facts alleged in the complaint, the civil impoundment of Mateos–Sandoval's truck was not justified under the community caretaking doctrine and not authorized under § 14602.6. *See id.* at 866. Under *Miranda*, it is not necessary to consider whether County Defendants' justification of the impoundment as a penalty triggers heightened procedural protections in order to determine that Plaintiffs have stated a claim under the due process clause. *See id.* at 867–68; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) ("Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property.") County Defendants' motion to dismiss plaintiffs' fourth count therefore is denied.

### 5. Deprivation of Due Process—excessive fee

■ Plaintiffs' fifth count alleges that Defendants have a "custom, policy, and practice" of imposing a fee on vehicles seized and impounded pursuant to § 14602.6 that is "in excess of the administrative costs associated with the seizure and impound." (Docket No. 1, at ¶ 87.) They contend that the imposition of this fee violates § 22850.5(a), which permits a state or local government agency to establish procedures for the imposition of "a charge equal to its administrative costs relating to the removal, impound, storage, or release of the vehicles," and constitutes a constitutional violation. County Defendants move to dismiss this count because the complaint does not allege that Mateos–Sandoval paid any administrative fee to County Defendants. They are correct. Because the complaint provides no factual basis for a claim that County Defendants imposed an excessive fee, Count Five will be dismissed against them, without prejudice.

## CONCLUSION

For the reasons given above, City Defendants' Motion to Dismiss is GRANTED as to:

1. All state-law claims;

2. Claims for prospective relief;

3. All claims brought on behalf of Mateos–Sandoval;

4. The takings clause claim (Count Two); and

5. The claim that City Defendants' hearing procedures denied Plaintiffs due process (Count Three).

County Defendants' Motion to Dismiss is GRANTED as to:

1. All state-law claims;

2. Claims for prospective relief;

3. All Claims brought on behalf of Avendando Ruiz;

4. All § 1983 personal-capacity claims against Sheriff Freitas;

5. The takings clause claim (Count Two);

6. The claim that County Defendants' hearing procedures denied Plaintiffs due process (Count Three); and

7. The excessive fee claim (Count Five).

The above-referenced claims are dismissed without prejudice. Any amended complaint must be filed on or before March 4, 2013. Defendants' motions are otherwise DENIED.

IT IS SO ORDERED.